Appellant, Robert Lee Traylor, appeals from the trial court's denial of his writ of error coram nobis charging ineffective assistance of counsel. Appellant's petition was denied without the aid of an evidentiary hearing. Appellant contends that he has made sufficient allegations in his petition to require an evidentiary hearing with the aid of counsel. David v. State,416 So.2d 778 (Ala.Crim.App. 1982).
Appellant was convicted of first degree robbery while armed with a dangerous instrument, § 13A-8-41, Code of Alabama 1975, and sentenced to life imprisonment. An appeal was taken in which this court affirmed appellant's conviction without a written opinion. Traylor v. State, 434 So.2d 877 (Ala.Crim.App. 1983).
Taking judicial notice of our own records, Stephens v. State,420 So.2d 826 (Ala.Crim.App. 1982), we will recite the facts of this case.
Freddie Don Loden, a truck driver, testified he had just made his deliveries into the City of Birmingham on the night of May 27, 1981. After being paid, he went to meet some friends at King's Drive-In Restaurant and stayed there from about 9:30 or 10:00 o'clock until sometime after 2:00 o'clock in the morning. He stated that he left driving his 1978 red Mazda automobile and was alone when he started traveling west on 10th Avenue, near the 3300 block. He stated that when he got to 34th Street and 10th Avenue, North, he was stopped at a red light. Before he could drive away, three black males opened the door of his vehicle, pulled him out of the car and seized his wallet, which contained over $200 in cash. As Loden was struggling with his assailants, the men took a knife and stabbed him in the groin and stomach. Two men's rings, one of the value of around $5500, and the other of the value of some $250, were taken from his person. After being stabbed, he was left lying in *Page 187 
the street. Loden saw some police officers a short time later and told them of being robbed by three black males. Loden stated that the paramedics were called and he was taken to the hospital, where he was treated. Two days later he appeared at a police line-up in the City of Birmingham, and without hesitation, picked out two black males in the line-up. There were six persons in the line-up, all dressed in white coveralls, varying in height from 5'9" to 6' tall and from 145 pounds to 160 pounds.
The two police officers who testified in the case verified that Loden did not hesitate, but picked out the two men in the line-up within just a few moments. Appellant was identified positively in open court by Loden as one of the males who had robbed him and as the one who had had possession of the knife.
On cross-examination, Loden was examined extensively and he stated that he had seen these same three black males earlier that evening when they came in King's Restaurant where he and his friends were dining. He stated that these three black males were loud and boisterous and abusive toward a waitress. He also stated that at the time of his being robbed he was under a street light and got a good look at the men's faces.
Birmingham Police Officer H.R. McWhorter testified that he was on the eleven-to-seven shift on the night of May 27, 1981. He testified that about 2:30 A.M. he was patroling an area of 10th Avenue, North and 34th Street. He stated that he had received a call from a guard at the Sunnyland Refining Company informing him that there were four black males driving around in a light blue Ford acting in a suspicious manner. McWhorter stated that he attempted to trail the light blue Ford, but the car eluded him and that he picked up the car a short time later and then followed this blue Ford to the area of an apartment house. When McWhorter stopped the blue Ford he asked the appellant to exit the car, which he was driving. McWhorter arrested appellant at 2:54 A.M., and took him to police headquarters.
On cross-examination McWhorter stated that another person had been driving a 1978 Mazda GLC, and was brought in that same night and that this was the vehicle which belonged to Mr. Loden. Also on cross-examination, Officer McWhorter stated that he did not find any rings or currency on the person of appellant at the time of arresting him near the apartment complex. He stated that Officer Sam Connor was the party who brought in the Mazda, which belonged to Mr. Loden, and that a party by the name of Willie Gordon had been driving the Mazda. This testimony was confirmed by Officer Connor.
Sgt. D.R. Rhodes testified that he was on patrol in the City of Birmingham on the night of May 27, 1981, and that about 2:20 or 2:30 A.M., between the 3300 and 3400 block of 10th Avenue, North, he discovered Mr. Loden lying in the street. While Rhodes was waiting for the paramedics, Mr. Loden became conscious enough to tell him that he had been robbed and that three black males had taken a red 1978 Mazda. Rhodes put out an alarm for this vehicle.
Sgt. John Barefield of the Birmingham Police Department described the line-up and mentioned the size and general description of the parties in the line-up which was attended by Mr. Loden. He stated that Mr. Loden did not hesitate in picking out Willie Gordon and Robert Traylor; that they were two of the six in the line-up and this was two days after the incident in question.
There was a motion to exclude and a motion for a judgment of acquittal at the close of the State's case, which was overruled. Following this, there was a discussion of some length with the trial judge, advising appellant that he had been convicted earlier for burglary and that he had not been sentenced, but that if he took the stand to testify, he could be examined about this. See Traylor v. State, 439 So.2d 178
(Ala.Crim.App. 1983). He then conferred with his attorney, and when they returned the trial judge reiterated (R. 72-73) that he did not believe that appellant's earlier conviction could be kept out of the trial and that it was an admissible matter. *Page 188 
Thereafter, appellant decided to take the stand and testify in his own behalf. Appellant testified that on the night in question he had been with a cousin by the name of Charlie Wallace, who was paralyzed. Appellant stated that he came home about 10 o'clock that evening and that a man and a woman asked him to give them a ride to the West End area. He stated that they paid him $2 to do this. Later that evening appellant was returning from a U-Totem store after purchasing some cigarettes, when he was approached by Officer McWhorter, who arrested him while he was driving his own blue 1969 Ford. Appellant was asked if he had been near the Sunnyland Refinery located on the 3400 block of 10th Avenue, North, to which he responded that he did not recall. Appellant denied ever going in King's Restaurant or ever seeing Mr. Loden; he further denied assaulting him with a knife or robbing him.
In appellant's petition he alleges ineffective assistance of counsel, citing as grounds: (1) Counsel failed to give notice of appeal; (2) counsel failed to communicate with appellant after trial; (3) counsel failed to file a motion for rehearing after his conviction was affirmed by this court; (4) counsel failed to have appellant present when the petit jury was empanelled; (5) counsel failed to investigate allegations of the victim's being cut, and failed to have a report of the "cutting" offered into evidence; and (6) counsel failed to call a witness who would provide an alibi for appellant on the night in question.
Appellant's contentions (1), (2), and (3), as stated above, are without merit. Our court records indicate that oral notice of appeal was given and subsequently a brief was filed with this court. We affirmed appellant's conviction without opinion. It is unlikely that an application for rehearing would have been granted under these facts.
Appellant claims he was absent when the petit jury was empanelled, thus requiring reversal. This allegation is not supported by the record. The judgment entry and sentencing portion of the transcript affirmatively show that the appellant was in open court during the empanelling of the jury, which occurred on August 16, 1982. This entry constitutes sufficient proof that appellant was present during empanelling of the jury. It is well settled that recitals in the judgment import absolute verity, unless contradicted by other portions of the record. Davis v. State, 348 So.2d 844 (Ala.Crim.App.), writ denied, Ex parte Davis, 348 So.2d 847 (Ala. 1977). The judgment entry stands uncontradicted in the instant case.
Matters relating to ineffective assistance of counsel are properly raised by a petition for writ of error coram nobis.Summers v. State, 366 So.2d 336 (Ala.Crim.App.), cert. denied,366 So.2d 346 (Ala. 1979). Thus we will consider whether the allegations espoused by appellant rise to the level of requiring an evidentiary hearing under the principles enumerated by the United States Supreme Court in the recent case of Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984).
In Strickland, supra, the Court delineated the test to be applied on review of ineffective-assistance-of-counsel claims, as follows:
 "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
104 S.Ct. at 2064. The Court further stated that there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome *Page 189 
the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id.104 S.Ct. at 2066 (citations omitted). In the case sub judice the appellant has failed to carry his burden.
In appellant's petition he alleges that counsel failed to call a witness who would provide appellant with an alibi. At trial appellant testified that he was with Charlie Wallace until about 10:00 P.M. He then proceeded to a "lady friend's" apartment in the projects, where he remained until about 11:00 P.M., and he then went home, arriving between 11:00 and 11:30 P.M. About 11:45 he took two individuals to the West End at their request, and was paid two dollars. He then dropped off two "guys that were in my car" on 10th Avenue about 12:00 or 12:30 A.M. He then went home and left only once, to get some cigarettes from the U-Totem store. Upon his return from the U-Totem he was arrested. Appellant stated on direct examination that no one was with him while he was at home prior to, or during the trip to the U-Totem store.
In appellant's petition there is an affidavit signed by one James Earl Thomas and witnessed by three persons who have prisoner identification numbers, which states:
 "I came by Robert Lee Traylor house on May 27, 1981, around 11:30 or 12:00 o'clock, and do know for a fact that Robert Lee Traylor could not been involved in a robbery cause I was in his presence from about 12:00 o'clock till he was arrested that night, I would have testified to this fact if I had been called to court."
The statement is directly contrary to the testimony elicited at trial from the appellant himself, who stated on direct examination that he was alone during this period. The testimony of Officer McWhorter and appellant established that appellant was alone when arrested.
In Strickland, 104 S.Ct. at 2066, the Court stated:
 "The reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable."
Assuming that Mr. Thomas, if called, would have testified as stated, such testimony would have contradicted both the testimony of appellant and that of Officer McWhorter. Such contradictions would be extremely harmful to appellant's defense. We view counsel's failure to call Mr. Thomas as sound trial strategy, if in fact counsel knew of the existence of Thomas at the time.
In regard to the records of the prosecuting witness's being "cut," we see no reason why such records were necessary. There was substantial testimony concerning the victim's being stabbed and the jury was allowed to view the scar which resulted from the stabbing. The introduction of hospital records would only be cumulative of the testimony adduced at trial. We can perceive of no objective which could have been accomplished by introduction of these records, in view of the testimony elicited at trial. Thus, introduction of such records falls within the purview of trial strategy under the facts at bar.
The appellant having failed to show that counsel was deficient, it is not necessary for us to review the prejudice aspect of the Strickland test. Absent some showing of deficiency in performance, there is nothing to review for prejudicial effects. We have carefully reviewed the trial record of this case, in view of appellant's rather sketchy pro se petition, and have found no deficiencies in counsel's conduct, apparent from the record, which require our delving into the prejudice component of the Strickland test. *Page 190 
The trial judge properly denied appellant's writ of error coram nobis without an evidentiary hearing.
 "In considering a petition for writ of error coram nobis, a court may and should determine the `reasonableness of the allegations made in the petition and the probability or improbability of their truth.' [Citations omitted.] A court is not bound to accept at face value the allegations of the petition. [Citation omitted.]"
Holsclaw v. State, 429 So.2d 1185 at 1187 (Ala.Crim.App. 1983). The appellant would have been required, at a hearing, to prove the truth of the allegations in his petition, Summers v. State, supra, which he obviously could not have done in this case. A hearing should not be granted without affidavits sufficiently refuting a record that appears correct. Stephens v. State,420 So.2d 826 (Ala.Crim.App. 1982). Although appellant's petition contains supporting affidavits, such are not sufficient to refute the record in this case. Appellant has submitted no affidavits to refute the judgment entry showing his presence at the jury's empanelling, and the affidavit of Mr. Thomas directly contradicts appellant's own testimony at trial.
Having considered all the issues raised by appellant, we find his petition for writ of error coram nobis to be without merit; the petition was properly dismissed. For the foregoing reasons this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.