United States Court of Appeals,

Eleventh Circuit.

No. 94-6793.

Walter HILL, Petitioner-Appellant,

v.

Ronald E. JONES, Commissioner, Alabama Department of Corrections, Respondent-Appellee. (No. CV-90-N-0713-S), Edwin L. Nelson, Judge.

April 9, 1996.

Appeal from the United States District Court for the Northern District of Alabama.

Before HATCHETT, COX and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Walter Hill, an Alabama inmate convicted of capital murder and sentenced to death, appeals the district court's denial of his petition for a writ of habeas corpus. Finding the district court did not err in denying relief on these claims, we affirm.

## I. BACKGROUND

A. *The Crime*

Walter Hill was convicted and sentenced to death for the January 1977 murders of Willie Mae Hammock, John Tatum and Lois Tatum in the Booker Heights community of Jefferson County, Alabama. In 1976, while residing in Jefferson County, Hill frequently gambled and drank at Willie Mae Hammock's home in Booker Heights. At the time, Ms. Hammock operated what has been described as a "shot house"—an illegal social club—out of her home. Ms. Hammock, Toni Hammock, John Tatum, and Lois Tatum all lived in Ms. Hammock's house. John Tatum, a 31-year-old retarded man, was the brother of Lois Tatum. Toni, the 13-year-old ward of Ms. Hammock, was often

present at the house while patrons, including Hill, were gambling and drinking.

Hill apparently developed a romantic interest in Toni and quarreled with Ms. Hammock approximately two weeks before the murders when Ms. Hammock refused to allow Toni to go with him to California. On January 7, 1977, at approximately 4:30 in the afternoon, Hill went to Ms. Hammock's home. Sometime after he arrived, Ms. Hammock gave Hill a pistol which he had left there on an earlier occasion. Hill asked whether he could marry Toni, but Ms. Hammock refused her permission.

Shortly thereafter, when Ms. Hammock turned to enter a closet in a front bedroom, Hill followed and shot her in the back of the head with his pistol. Proceeding to the dining room, Hill shot John Tatum twice in the head. Hill then chased down Lois Tatum and shot her in the back of the head as well. Hill told Toni, who had witnessed the shootings, he had "one more to kill." Hill was referring to Toni's 16-year old brother Robert.

Hill and Toni drove to another house to get Robert. Robert got into the car with Hill and Toni, but threatened to jump from the car when Hill was evasive about their destination. Hill told Robert he would "put a bullet in his head" if he attempted to escape. Hill, Toni, and Robert then drove to Georgia where their car broke down. At that point, Robert escaped and returned to Birmingham where he discovered the bodies of Ms. Hammock and the Tatums.

After Robert escaped, Hill and Toni walked into a residential neighborhood in Decatur, Georgia where they encountered Lewis

Nunnery. Hill and Toni told Nunnery they needed assistance getting their car repaired, and Nunnery agreed to help. After the three of them got into Nunnery's car, Hill ordered Nunnery to drive them to South Carolina. Hill told Nunnery that he was a fugitive from Alabama who had just killed three people and would kill again. Hill warned he would kill the police or anyone else who tried to stop him.

Hill forced Nunnery on a drive that took them through South Carolina and Tennessee. After their car overheated and broke down in North Carolina, Hill fell asleep and Nunnery escaped. Nunnery reported his abduction to the police, and Hill was arrested in the disabled car on the side of the road. Police found the pistol with which Hill had killed Ms. Hammock and the Tatums in his pocket.

At the time of his arrest, Hill was 45 years old and had spent most of his adult life incarcerated. In 1952, Hill was convicted of second-degree murder in an Alabama state court and sentenced to ten years' imprisonment. He was released from custody in 1960, but a year later was convicted in federal court in Alabama of kidnapping and interstate transportation of a stolen vehicle. He received a 25-year sentence for the crime. While serving that sentence in the federal penitentiary in Atlanta, Hill was convicted of stabbing another inmate to death and was sentenced to an additional five years in custody. Hill was paroled in 1975 after having served approximately 13 years of his federal sentences. He returned to live in Birmingham where less than two years later he committed the murders for which he is sentenced to death.

B. *State Court Proceedings*

In October 1977, Hill was convicted in Alabama circuit court of capital murder in the killings of Ms. Hammock and the Tatums. At the time, Hill was represented by attorneys William Short and Jackie McDougal. Following a sentencing hearing, Judge Harry Pickens sentenced Hill to death. The Alabama Court of Criminal Appeals reversed the conviction after finding the prosecution had improperly used "for cause" challenges to strike death-scrupled jurors in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). *See Hill v. State,* 371 So.2d 64, 67 (Ala.Crim.App.1979).

Hill was tried a second time for capital murder before Judge Pickens beginning on August 21, 1979. At his second trial, Hill was represented by McDougal and Robert Boyce. Hill was again convicted of capital murder, and Judge Pickens conducted a sentencing hearing on September 14, 1979, at which he orally sentenced Hill to death. Judge Pickens died before he could enter a signed sentencing order.

Thereafter, Judge Gardner Goodwyn assumed Hill's case. Judge Goodwyn held a *de novo* sentencing hearing on February 19, 1980, to determine whether Hill should be sentenced to death or life without parole. In preparation for this hearing, Judge Goodwyn read the transcript of Hill's second guilt-phase trial in Judge Pickens' court. Following the hearing, Judge Goodwyn made separate findings of fact concerning relevant aggravating and mitigating circumstances. Judge Goodwyn found the evidence supported three statutory aggravating circumstances: (1) the murders were "especially heinous, atrocious or cruel," (2) Hill knowingly

created a "great risk of death to many persons," and (3) Hill had been convicted of several prior violent felonies. Finding no mitigating circumstances, Judge Goodwyn sentenced Hill to death.

Represented by McDougal and Boyce, Hill appealed his second conviction and death sentence to the Alabama Court of Criminal Appeals. The appeals court reversed Hill's conviction citing*Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), where the Supreme Court held unconstitutional a portion of the Alabama death penalty statute under which Hill was convicted. *Hill v. State,* 407 So.2d 567 (Ala.Crim.App.1981). The Supreme Court of Alabama denied certiorari. *Hill v. State,* 407 So.2d 567 (Ala.1981). Neither McDougal nor Boyce represented Hill in any proceeding after the petition for certiorari in the Alabama Supreme Court.

The State of Alabama petitioned the United States Supreme Court for certiorari, arguing the *Beck* decision did not invalidate Hill's conviction and sentence. On June 14, 1982, the Supreme Court vacated and remanded in light of *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). *Alabama v. Hill,* 457 U.S. 1114, 102 S.Ct. 2920, 73 L.Ed.2d 1325 (1982). After review, the Alabama Court of Criminal Appeals affirmed Hill's conviction and sentence. *Hill v. State,* 455 So.2d 930 (Ala.Crim.App.1984). The Alabama Supreme Court affirmed, *Ex parte Hill,* 455 So.2d 938, 939 (Ala.1984), and the United States Supreme Court denied certiorari. *Hill v. Alabama,* 469 U.S. 1098, 1098, 105 S.Ct. 607, 608, 83 L.Ed.2d 716 (1984). On his final petition to the United States Supreme Court on direct appeal, only attorney Alan W. Howell

represented Hill.

On December 5, 1985, Howell filed a petition for writ of error coram nobis on Hill's behalf in the Circuit Court of Jefferson County, Alabama. The petition raised only one claim: that the prosecution withheld exculpatory evidence from Hill's trial counsel in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On January 21, 1987, Circuit Judge James Garrett held an evidentiary hearing on Hill's *Brady* claim. Judge Garrett denied the claim by written order. The Alabama Court of Criminal Appeals affirmed, *Hill v. State,* 541 So.2d 83 (Ala.Crim.App.1988), and the Alabama Supreme Court denied certiorari, *Ex parte Hill,* 562 So.2d 315 (Ala.1989).

On petition for certiorari to the United States Supreme Court, Hill argued for the first time that his death sentence rested on the "especially heinous, atrocious or cruel" aggravating circumstance which had been applied in an unconstitutionally vague manner in violation of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) and *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The Supreme Court denied certiorari on October 2, 1989. *Hill v. Alabama,* 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989).

In March 1990, Hill filed a second petition for collateral relief in the Alabama trial court under Rule 20 of the Alabama (Temporary) Rules of Criminal Procedure.[1] In his petition, he listed twelve claims, including the *Brady* claim denied in his 1985

---

[1] Temporary Rule 20 is now codified as Rule 32 of the Alabama Rules of Criminal Procedure.

coram nobis petition. He also raised for the first time claims of ineffective assistance of trial and appellate counsel. Without holding an evidentiary hearing, Judge Garrett dismissed all but the *Brady* claim as barred under Alabama's "successive petition rule" codified in Temporary Rule 20.2(b). As for the *Brady* claim, he found it factually insufficient and concluded Hill was attempting to reargue an issue previously litigated in the 1985 coram nobis petition.

C. *District Court Proceedings*

Hill, represented by attorneys Howell and Oliver Loewy, filed a petition for habeas corpus in the district court for the Northern District of Alabama on April 12, 1990. On April 17, 1990, the district court ordered Hill to make any amendments adding new claims to his petition within 30 days. Hill filed his amended petition by the deadline, asserting seventeen grounds for relief. In its answer, the State of Alabama (the State) countered that most of Hill's claims, including those alleging ineffective assistance of counsel, were procedurally defaulted under Alabama law. Hill responded to the State's procedural default defense in a footnote of his reply brief.

Seven months later, the court *sua sponte* issued an order questioning Hill's cursory reply to the State's procedural default defense. The court directed the parties to review and present additional argument and authority on the default issues raised in Hill's petition. The court further noted that, in light of the State's argument that most of Hill's claims were procedurally defaulted, Hill may desire to claim Howell was ineffective in

failing to present those claims in Hill's 1985 coram nobis petition. On March 22, 1991, Howell withdrew from the case so as "to permit Mr. Hill to more clearly present issues critical to his case." Loewy continued to represent Hill. By August 21, 1991, Hill had not alleged his collateral counsel was ineffective, and the court therefore assumed Hill had raised all the issues he intended to present.

The court still instructed Hill to file a supplemental brief on the issue of procedural default. Citing *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) and *Johnson v. Singletary,* 938 F.2d 1166 (11th Cir.1991) (en banc), *cert. denied,* 506 U.S. 930, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992), the court ordered Hill to address what effect, if any, these decisions had on his claims. In his supplemental brief, Hill raised three general arguments against finding most of his claims procedurally defaulted.[2] First, he argued that because this was his initial federal petition, he was entitled to an evidentiary hearing on his claims regardless of their status under state law. Second, he contended the State did not adequately compensate his coram nobis counsel or provide sufficient funds to investigate and present all viable claims in 1985. Third, he argued it would be manifestly unjust to bar review of his claims on procedural grounds.

On April 13, 1994, the district court dismissed Hill's claims and denied his petition without a hearing. In a

---

[2]Hill also argued claims of ineffective assistance of appellate counsel were not cognizable in Alabama coram nobis proceedings in 1985. Since this cause argument is particular to the ineffective assistance claim, we will address it in section II.B, *infra.*

thoroughly-researched and carefully-reasoned order, the court found twelve of Hill's claims were procedurally defaulted, and determined that Hill had failed to demonstrate cause and prejudice or manifest injustice excusing the defaults. The court concluded the remainder of Hill's claims, while not procedurally barred, were without merit.

Fifteen days after the court denied Hill's petition, Mr. Loewy moved to withdraw as Hill's counsel, and Barry Fisher and Palmer Singleton filed a notice of appearance on Hill's behalf. Hill's new counsel contemporaneously filed a "Second Amended Petition" for habeas corpus, as well as motions to alter or amend judgment and for an evidentiary hearing. In these pleadings, Hill raised several new arguments rebutting the State's procedural default defense. The district court struck the second amended petition and supplemental evidentiary materials as untimely in light of the court's April 17, 1990, order. The court further denied as dilatory Hill's motions to amend its judgment and for an evidentiary hearing.

Hill now appeals the district court's denial of his petition.

## II. DISCUSSION

At the outset, we note several arguments concerning procedural default which Hill attempted to raise in the district court through his untimely post-judgment motions reappear in his briefs and argument before this Court. As a general rule, we will not entertain issues or arguments on appeal that were not fairly presented to the district court. *Depree v. Thomas,* 946 F.2d 784, 793 (11th Cir.1991); *White v. State of Fla., Dept. of Corrections,*

939 F.2d 912, 914 (11th Cir.1991), *cert. denied,* 503 U.S. 910, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1992); *Campbell v. Wainwright,* 738 F.2d 1573, 1575-76 (11th Cir.1984), *cert. denied,* 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986). In its April 17, 1990, order and several hearings with Hill and his attorneys, the district court ordered Hill to raise all claims and arguments early in the review process. The court went so far as to single out the question of procedural default for special attention by the parties.

After more prodding by the district court, Hill filed a supplemental brief on procedural default on September 20, 1991. As noted above, he relied only upon this being his first federal petition, the lack of state funding for his coram nobis counsel, and a contention of manifest injustice to rebut the State's procedural default defense. He did not attempt to apprise the court of any new arguments on procedural default in the nearly two and a half years between his filing of this brief and the district court's judgment. Thus, he had ample opportunity to raise several of the new theories he now relies upon, but failed to do so.

Although we will discuss these new arguments below, we emphasize that even if they had merit, we would not grant relief on these grounds. Capital habeas cases present district courts with complex and sometimes novel issues in subjects such as procedural default, cause and prejudice, and retroactivity. Given the time district courts must invest in researching and reviewing such questions, courts must, as in this case, define early in the process the issues they face in ruling on a petition. A court is

not obliged to stand by as successive teams of attorneys cull the record and conjure up new arguments for the court to consider.[3]  At some point, the court has to assume the parties have made their arguments, and it can begin resolving the disputed issues.  The district court in this case gave Hill ample opportunity to raise all the arguments he intended to present before proceeding to rule on his petition.  The district court correctly refused to consider Hill's untimely arguments, and we will not sanction Hill's effort to circumvent this ruling on appeal.

With this in mind, we turn to Hill's claims on appeal.  Although Hill listed seventeen claims in his petition before the district court, he has narrowed his appeal to six.  We find only

---

[3]We note the attorneys who filed the post-judgment motions in district court on Hill's behalf, Barry Fisher and Palmer Singleton, were the third and fourth attorneys to represent Hill in his state and federal collateral petitions.  In an affidavit filed with the district court, Fisher claims he agreed to represent Hill in March 1994 and was reviewing the record in this case when the district court entered its order denying Hill's petition.  According to Fisher, his review of the record and additional legal research uncovered issues and claims which he felt should have been raised in Hill's amended petition filed on May 17, 1990.  He felt obligated to present these claims and arguments in the second amended petition and motion to amend the judgment filed two weeks after the district court's decision.

While Fisher allegedly uncovered issues prior counsel overlooked, the fact remains the second amended petition and the arguments in support of it were untimely.  Hill's petition had been pending for four years at the time the district court issued its ruling.  Hill had ample opportunity to amend his petition and raise pertinent arguments in support thereof.  Though Fisher and Singleton appear to have acted with dispatch once they took up Hill's case, their late entry into the proceedings did not require the district court to postpone its review of the amended petition and await the views of these new attorneys.  When they accepted Hill's case, Fisher and Singleton were bound by the district court's orders, the procedural posture of the case, and the decisions of Hill's prior counsel on what arguments to make to the court.

four claims merit discussion.[4]  In them, Hill alleges:  (A) ineffective assistance of trial counsel based on his counsel's purported failure to conduct an adequate pre-trial investigation, object to errors of the Alabama trial court, and present evidence of mitigating circumstances during Hill's sentencing hearing;  (B) ineffective assistance of appellate counsel in failing to challenge two aggravating circumstances relied upon by the Alabama trial court in sentencing Hill to death;  (C) his death sentence is unconstitutional under *Beck* because he was precluded from presenting evidence in support of jury instructions on lesser-included offenses;  and (D) the prosecutor at his 1979 murder trial used his peremptory challenges to strike African-American citizens from the jury panel in violation of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

A. *Ineffective Assistance of Trial Counsel*

Hill argues the district court erred in dismissing his ineffective assistance of trial counsel claim without first holding an evidentiary hearing when no hearing had been held on the claim

---

[4]Hill also asserts:  (1) the three aggravating circumstances found by the Alabama trial court support his death sentence were either not supported by the facts of the crime or were applied in an unconstitutional manner by the court;  and (2) he was denied a reliable sentencing hearing because he was not permitted to cross-examine certain state witnesses before the judge who conducted the sentencing hearing in violation of *Moore v. Zant,* 885 F.2d 1497 (11th Cir.1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990) and *Proffitt v. Wainwright,* 685 F.2d 1227 (11th Cir.1982), *modified,* 706 F.2d 311 (11th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983).

We find these claims were procedurally defaulted and Hill has failed to demonstrate either cause or manifest injustice to excuse the bar.  Hence, we affirm the district court's dismissal of these claims.

in state court.  Hill contends his trial counsel's failure to investigate and present mitigating evidence, in combination with other alleged errors, rendered their assistance constitutionally ineffective within the meaning of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[5]

Hill first raised a *Strickland* claim in his Rule 20 petition, which was his second state collateral attack on his conviction and

---

[5]In the district court, Hill alleged the following errors of McDougal and Boyce in support of his claim of ineffective assistance of trial counsel:  (1) failure to conduct an adequate pre-trial investigation of the crime and Hill's background;  (2) failure to raise a *Swain* challenge to the prosecutor's use of peremptory challenges;  (3) failure to obtain exculpatory evidence in the hands of the prosecution;  (4) failure to challenge the prosecution's alleged improper guilt-phase closing argument;  (5) failure to challenge the aggravating circumstance that the murders were "heinous, atrocious or cruel";  (6) failure to challenge the aggravating circumstance that Hill had a prior conviction for a violent felony;  (7) failure to challenge the aggravating circumstance that Hill had created a great risk of death to many persons;  (8) failure to challenge the sentencing court's alleged reliance on the character of the victims in sentencing Hill to death;  (9) failure to challenge the sentencing court's alleged refusal to consider non-statutory mitigating circumstances;  (10) failure to challenge the trial court's denial of a jury hearing on whether the murders were "heinous, atrocious or cruel" and whether Hill created a great risk of death to many persons;  (11) failure to challenge the sentencing judge's alleged "presumption" in favor of death;  (12) failure to challenge the sentencing judge's alleged deference to the jury having "fixed" Hill's sentence at death;  (13) failure to challenge the prosecution's introduction of an inaccurate copy of Hill's 1967 homicide conviction;  (14) eliciting damaging testimony from Hill regarding his prior convictions during the guilt phase of his trial;  and (15) failure to challenge the prosecution's elicitation of testimony from Hill regarding a prior conviction.

On appeal, Hill cites his attorneys' failure to conduct an adequate pre-trial investigation, failure to object to the alleged *Swain* violation, decision to have Hill testify during both the guilt and sentencing phases of his trial, and failure to present mitigating evidence during the sentencing phase of his trial in support of his ineffective assistance of trial counsel claim.

sentence. By the time of his Rule 20 proceeding in 1990, Alabama had codified its "successive petition rule":

> The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

Ala.Temp.R.Crim.P. 20.2(b).[6] The Alabama trial court dismissed Hill's ineffective assistance claim as procedurally barred because Hill could have raised the claim in his 1985 state collateral petition but failed to do so.

Federal courts may not review a claim procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief. *Harris v. Reed,* 489 U.S. 255, 260-61, 263, 109 S.Ct. 1038, 1042-43, 103 L.Ed.2d 308 (1989). There are only two exceptions to the procedural default rule. First, a petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *see Wainwright*

---

[6]Alabama Rule of Criminal Procedure 20.2(b) was enacted as a temporary rule effective April 1, 1987. *Toles v. Jones,* 888 F.2d 95, 98 (11th Cir.1989), *vacated,* 905 F.2d 346 (11th Cir.1990), *reinstated,* 951 F.2d 1200 (11th Cir.) (en banc), *cert. denied,* 506 U.S. 834, 113 S.Ct. 106, 121 L.Ed.2d 65 (1992). The current Rule 32.2(b) of the Alabama Rules of Criminal Procedure replaced Rule 20.2(b) effective January 1, 1991, and contains language identical to that of its predecessor.

*v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Second, in extraordinary cases, a federal habeas court may grant the writ without a showing of cause and prejudice to correct a fundamental miscarriage of justice. *See Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 53 L.Ed.2d 594 (1982). To excuse a default of a guilt-phase claim under this latter standard, a petitioner must prove "a constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649 (1986). To gain review of a sentencing-phase claim based on manifest injustice, a petitioner must show that "but for constitutional error at his sentencing hearing, no reasonable juror could have found him eligible for the death penalty under [state] law." *Sawyer v. Whitley,* 505 U.S. 333, 346-48, 112 S.Ct. 2514, 2423, 120 L.Ed.2d 269 (1992).

A state habeas petitioner is not entitled to an evidentiary hearing in federal court on the merits of a procedurally defaulted claim unless he can first overcome the procedural bar. This requires showing either cause for failing to develop in state court proceedings the facts supporting his claim, and prejudice resulting from that failure, *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 11-12, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992); *Weeks v. Jones,* 26 F.3d 1030, 1043 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1258, 131 L.Ed.2d 137 (1995), or a "fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Tamayo-Reyes,* 504 U.S. at 11-12, 112 S.Ct. at 1721. A petitioner is not entitled to a hearing on the threshold issues of

cause and prejudice or manifest injustice without first proffering specific facts which support a finding that one of these exceptions to the procedural default rule exists. *See Smith v. Wainwright,* 741 F.2d 1248, 1261 (11th Cir.1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 151 (1985).

Hill advances two arguments against finding his ineffective assistance of trial counsel claim procedurally defaulted. Hill initially contends Alabama's successive petition rule, as applied in his case, is not an "independent and adequate" state ground for denying the claim. Assuming we find Alabama's successive petition rule supports the procedural bar, Hill claims he is still entitled to a decision on the merits of the claim, and therefore an evidentiary hearing, because the ineffectiveness of his coram nobis counsel excuses his failure to raise a *Strickland* claim in his 1985 coram nobis petition.

1. *Alabama's common law successive petition rule as an independent and adequate ground for procedural default.*

A state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed." *Ford v. Georgia,* 498 U.S. 411, 423-24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky,* 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984)); *Cochran v. Herring,* 43 F.3d 1404, 1408 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 776, 133 L.Ed.2d 728 (1996). Prior to its codification in 1987 as part of Temporary Rule 20, Alabama's successive petition rule existed in the state's common law. *See Ex parte Cox,* 451 So.2d 235, 238-39 (Ala.1983); *Waldon v. State,* 284 Ala. 608, 227 So.2d 122, 123 (1969); *Ex parte Phillips,* 277 Ala.

82, 167 So.2d 165, 166 (1964).  Thus, at the time Hill filed his 1985 petition, Alabama's successive petition rule existed only in its common law form. [7]  Hill argues that at common law, Alabama courts randomly invoked the rule and at times reviewed the merits of new claims raised in successive petitions.  Hill reasons that because the rule was not "firmly established and regularly enforced" at the time of his coram nobis proceedings, the rule cannot support a procedural default of his *Strickland* claim.

A review of the pleadings before the district court reveals Hill raised this argument for the first time in his motion to amend the judgment filed two weeks after the court dismissed Hill's petition.  Since Hill did not properly present this argument to the district court, he cannot rely on it to gain relief in this Court.

Alternatively, even if Hill had properly preserved this argument, it would be unsuccessful given this Court's prior holdings in Alabama capital habeas cases.  On several occasions we have upheld procedural defaults based on Alabama's common law successive petition rule. *See Kennedy v. Herring,* 54 F.3d 678, 684 (11th Cir.1995); *Weeks,* 26 F.3d at 1043; *Toles v. Jones,* 888 F.2d 95, 98-99 (11th Cir.1989), *vacated,* 905 F.2d 346 (11th Cir.1990), *reinstated,* 951 F.2d 1200 (11th Cir.) (en banc), *cert. denied,* 506 U.S. 834, 113 S.Ct. 106, 121 L.Ed.2d 65 (1992); *Richardson v. Johnson,* 864 F.2d 1536, 1539-40 (11th Cir.), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3175, 104 L.Ed.2d 1037 (1989).  Implicitly, these cases recognize Alabama's common law successive petition rule was

---

[7]Hill's petition, however, was still pending in the Alabama trial court on April 1, 1987, when Temporary Rule 20.2(b) came into effect.

"firmly established and regularly followed" before it was codified in Temporary Rule 20.2. In the face of this precedent, Hill's argument must fail.

2. *Coram nobis counsel's ineffectiveness as cause.*

Given Alabama's successive petition rule is an independent and adequate state ground for default, Hill must demonstrate either cause and prejudice or manifest injustice to excuse the bar. Relying on *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), Hill contends the ineffective performance of his coram nobis counsel, Howell, excuses his failure to include his *Strickland* claim in his 1985 state petition. As noted above, Howell argued only the *Brady* claim on Hill's behalf in the coram nobis proceedings.

As with his attack on the adequacy of Alabama's successive petition rule, Hill failed to raise his cause argument premised on *Coleman* until after the district court had rendered its final judgment. As a result, we will not credit this argument on appeal. Hill's failure to preserve this issue, however, is of no moment. Our precedent precludes Hill from relying on the alleged ineffectiveness of his collateral counsel to excuse the procedural default of not only his *Strickland* claim, but any other claim he failed to include in his coram nobis petition.

Hill's cause argument presumes he had a constitutional right to counsel during the 1985 coram nobis proceedings. For counsel's ineffectiveness to establish cause, *i.e.,* be a factor external to the defense, it must be attributable to the state. *Coleman,* 501 U.S. at 754, 111 S.Ct. at 2567. Such error can only be imputed to

the state when the Sixth Amendment requires the state furnish the defendant with effective counsel. *Id.; see Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. While defendants have a Sixth Amendment right to counsel at trial and on direct appeal, they do not have a corresponding right to counsel when collaterally attacking their convictions. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). This is so even in capital cases. *Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 2770, 106 L.Ed.2d 1 (1989).

Hill contends *Finley* and *Giarratano* do not prevent him from citing his coram nobis counsel's ineffectiveness as cause given the peculiar posture of his *Strickland* claim. Hill could not have asserted this claim on direct appeal because his trial counsel represented him on appeal as well. Since the 1985 coram nobis petition was Hill's first opportunity to assert a claim of ineffective assistance of counsel, Hill reasons he was entitled to constitutionally effective counsel in prosecuting that claim. In Hill's view, his coram nobis counsel's ineffectiveness cost him his one opportunity to raise a claim of ineffective assistance of counsel in Alabama courts. Hill contends that under these circumstances, his collateral counsel's ineffectiveness should qualify as cause.

In *Coleman,* the Supreme Court faced a similar but distinct situation. The petitioner in*Coleman* raised a claim of ineffective assistance of trial counsel in a Virginia habeas petition. *Coleman,* 501 U.S. at 755, 111 S.Ct. at 2567. Under Virginia law at the time of the petitioner's trial and direct appeal, ineffective

assistance of trial counsel claims could only be brought in state habeas. *Id.* (citing state authority). The state trial court denied the petitioner's claim. *Id.* at 727, 755, 111 S.Ct. at 2553, 2567. The petitioner's state habeas counsel then failed to perfect a timely appeal of the denial. *Id.* at 727-28, 111 S.Ct. at 2552-53. As a result, the claim was procedurally defaulted under state law, and presumptively barred from federal review. *Id.* Like Hill, the *Coleman* petitioner argued his habeas attorney's ineffectiveness caused the default of his *Strickland* claim, and this ineffectiveness should excuse the procedural bar. *Id.* at 752-55, 111 S.Ct. at 2566-67.

Addressing this argument, the Supreme Court in *Coleman* emphasized that "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation." *Id.* at 755, 111 S.Ct. at 2567. The Court reiterated there was no right to counsel in state collateral proceedings. *Id.* The Court then noted, but left unanswered, the question of whether "there must be an exception to the rule of *Finley* and *Giarratano* in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction." *Id.* The Court found it unnecessary to address this question because the petitioner in *Coleman* had presented his *Strickland* claim to the Virginia trial court, and that court ruled against him on the merits. *Id.* at 755, 111 S.Ct. 2567-68. Hill claims his case fits the "exception" noted in *Coleman* because unlike the petitioner in that case, Hill never presented his ineffective assistance of counsel claim to the Alabama trial court that heard his coram nobis petition. Thus,

Hill asserts his coram nobis counsel's ineffectiveness can serve as cause to excuse the default of his ineffective assistance of trial counsel claim because his coram nobis counsel's deficient performance denied him his one opportunity to litigate this claim.

In several post-*Coleman* decisions, this Court has rejected the proposition that collateral counsel's ineffectiveness can serve as cause excusing a procedural default. In *Toles,* we concluded ineffective assistance of collateral counsel cannot serve as cause and cited *Finley* in support. *Toles,* 888 F.2d at 99-100.[8] Likewise, in *Weeks* we again dismissed the argument that collateral counsel's ineffectiveness can serve as cause excusing a procedural default. In doing so, we noted:

> The Supreme Court has clarified that attorney error or ineffective assistance of counsel in a state collateral proceeding is not cause to override a procedural bar that precludes review of a claim in federal court.

*Weeks,* 26 F.3d at 1046 (citing *Coleman,* 501 U.S. at 752-757, 111 S.Ct. at 2566-68).[9]

---

[8]In reinstating the panel opinion in *Toles,* the en banc court noted that the Supreme Court's holding in *Coleman* decided the issue of whether collateral counsel's ineffectiveness could serve as cause to excuse a procedural default. *Toles,* 951 F.2d at 1201.

[9]Like Hill, the petitioners in *Weeks* and *Toles* sought to rely on ineffective assistance state collateral counsel to excuse their default of ineffective assistance of counsel claims. *Weeks,* 26 F.3d at 1042-46; *Toles,* 888 F.2d at 97.

> In *Toles,* the petitioner argued his coram nobis counsel's ineffectiveness should excuse his failure to raise a *Strickland* claim in his first state collateral petition. *Toles,* 888 F.2d at 99. Like Hill, the petitioner in *Toles* was represented by the same counsel at trial and on direct appeal, and different counsel in his coram nobis proceeding. *Id.* at 97. The coram nobis proceeding was therefore his first opportunity to present a claim of ineffective assistance of trial counsel. *See id.*

Thus, the possible exception to *Finley* and *Giarratano* the Supreme Court noted in *Coleman* simply does not exist in this circuit: a petitioner may not rely on his collateral counsel's ineffectiveness to excuse the procedural default of a claim even when the state collateral proceeding was the petitioner's first opportunity to raise the claim. *See also, Johnson v. Singletary*, 938 F.2d at 1174-75 (citing *Coleman* and rejecting argument that collateral counsel's ineffectiveness could serve as cause). To recognize such error as cause, we would have to find a petitioner has a constitutional right to counsel in collateral proceedings. *Finley* and *Giarratano* hold otherwise; and the Supreme Court emphasized this point in *Coleman.* As in *Toles* and *Weeks,* we decline to find an exception to the rule of *Finley* and *Giarratano* that would allow Hill to cite his coram nobis counsel's ineffectiveness as cause excusing his failure to raise a *Strickland* claim in his 1985 coram nobis petition.

Since Hill's ineffective assistance of trial counsel claim is procedurally defaulted and Hill has failed to show cause or manifest injustice, the district court did not err in dismissing this claim without a hearing.

B. *Ineffective Assistance of Appellate Counsel*

Hill contends McDougal and Boyce were constitutionally ineffective when they failed to challenge on appeal two of the

---

Similarly, the state coram nobis petition was the first opportunity for the petitioner in *Weeks* to assert a claim of ineffective assistance of trial counsel. *See Weeks,* 26 F.3d at 1033 (citing prior history indicating petitioner had same counsel at trial and on appeal, but different counsel at coram nobis).

aggravating circumstances relied upon by the Alabama court in sentencing him to death. Hill believes that given the undisputed facts of how Ms. Hammock and the Tatums died, Alabama law at the time of his sentencing would not have permitted the state court to find the murders "heinous, atrocious or cruel" or that Hill's conduct created a great risk of death to many others.[10] Hill concludes his attorneys' failure to challenge these aggravating circumstances violated his constitutional right to effective counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985).

As with his claim of ineffective assistance of trial counsel, Hill defaulted his appellate counsel claim by failing to assert it in his 1985 coram nobis petition. Though Hill presents several arguments supporting cause excusing this default, only one merits discussion.[11]

Hill contends that claims of ineffective assistance of appellate counsel were not cognizable in Alabama coram nobis proceedings in 1985. If Alabama law prevented such a claim at the time Hill filed his coram nobis petition, then the legal basis for the claim was unavailable to Hill and he would not be barred from

---

[10]Hill also contends that at the time he was sentenced, Alabama's "heinous, atrocious or cruel" circumstance was unconstitutionally vague according to *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Hill cites his attorneys' failure to raise on appeal an "obvious" claim under *Godfrey* as further evidence of their ineffectiveness.

[11]Hill again proposes Alabama's common law successive petition rule was not consistently enforced and therefore cannot bar review of this claim. Hill also reiterates his belief that ineffective assistance of coram nobis counsel amounts to cause. We already addressed these arguments above, and found them waived and without merit.

asserting it in his federal petition. *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. A careful review of Alabama case law, however, reveals an Alabama coram nobis court would have entertained a claim of ineffective assistance of appellate counsel back in December 1985.

Prior to Hill's filing his state petition, Alabama courts had stated generally that claims of ineffective assistance of counsel were grounds for coram nobis relief. *See Summers v. State,* 366 So.2d 336, 341 (Ala.Crim.App.1978), *cert. denied,* 366 So.2d 346 (Ala.1979); *Sheehan v. State,* 411 So.2d 824, 828 (Ala.Crim.App.1981). Hill does not contest that claims of ineffective assistance of *trial* counsel were cognizable in 1985. Rather, citing *Cannon v. State,* 416 So.2d 1097 (Ala.Crim.App.1982), Hill contends Alabama courts did not permit claims of ineffective assistance of *appellate* counsel. In *Cannon,* the Alabama Court of Criminal Appeals stated "allegations of inadequacy of appeal counsel are not within the scope of coram nobis," but cited no authority in support. *Cannon,* 416 So.2d at 1100. In 1991, the same court characterized this language in *Cannon* as "dicta" and counseled the statement "should not be interpreted to limit the ability of the trial court to hear a claim of ineffective assistance of appellate counsel." *Tedder v. State,* 586 So.2d 50, 53 (Ala.Crim.App.1991).[12]

Hill argues *Tedder*'s "clarification" of *Cannon* and Alabama law

---

[12]*Cannon* 's dicta was cited in only one case prior to *Tedder. See Holsclaw v. State,* 481 So.2d 445, 446 n. 2 (Ala.Crim.App.1985). In *Holsclaw,* however, the reference to *Cannon* was likewise dicta because the alleged attorney error in *Holsclaw* occurred pre-judgment. *See id.* at 446.

came too late to permit him to assert a claim of ineffective assistance of appellate counsel. According to Hill, *Cannon* 's statement created, at a minimum, confusion as to whether claims concerning ineffectiveness of appellate counsel were cognizable throughout the time his petition was pending in state trial and appellate courts. Hence, he claims he cannot be faulted for failing to include such a claim in his coram nobis petition.

Hill's argument gives *Cannon*'s statement weight it does not deserve. As the *Tedder* court recognized, *Cannon* 's comment on ineffective assistance of appellate counsel claims was dicta given the nature of the claims raised in *Cannon.* Moreover, *Cannon* 's unsupported statement is inconsistent with prior and subsequent decisions in which Alabama courts entertained claims in coram nobis proceedings premised on alleged post-judgment errors by counsel. *See, e.g., Ex parte Dunn,* 514 So.2d 1300 (Ala.1987) (failure to file briefs in support of appeal); *Jones v. State,* 495 So.2d 722 (Ala.Crim.App.1986) (failure to timely perfect appeal by filing transcript of trial), *cert. denied,* 514 So.2d 1068 (1987)[13]; *Dawson v. State,* 480 So.2d 18 (Ala.Crim.App.1985) (failure to perfect appeal); *Traylor v. State,* 466 So.2d 185 (Ala.Crim.App.1985) (failure to file motion for rehearing after conviction affirmed by court of appeals); *Harrison v. State,* 461 So.2d 53

---

[13]Although *Dunn* and *Jones* were decided after Hill filed his coram nobis petition in 1985, these decisions were handed down while Hill's petition was still pending in the Alabama trial court. *Jones* was decided September 9, 1986, prior to the Alabama trial court's January 21, 1987 hearing on Hill's petition. The Alabama Supreme Court issued its opinion in *Dunn* six months before the trial court issued its first order denying Hill's coram nobis petition in March 1988.

(Ala.Crim.App.1984) (failure to file brief in support of appeal); *Moffett v. State,* 457 So.2d 990 (Ala.Crim.App.1984) (failure to comply with the requirements of *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) in filing no merit letter); *Chappell v. State,* 457 So.2d 995 (Ala.Crim.App.1984) (failure to file brief in support of appeal); *Gwin v. State,* 456 So.2d 845 (Ala.Crim.App.1984) (advising petitioner to dismiss direct appeal); *Thomas v. State,* 373 So.2d 1264 (Ala.Crim.App.1979) (allegation that counsel had "not properly represented" petitioner on appeal); *Brutley v. State,* 358 So.2d 527 (Ala.Crim.App.1978) (failure to timely file transcript of trial with appellate court); *Messelt v. State,* 351 So.2d 627 (Ala.Crim.App.1977) (failure to timely file transcript of trial with appellate court).[14]

---

[14]Hill contends Alabama courts distinguished between claims where counsel failed to perfect an appeal, and claims grounded on an appellate attorney's failure to raise certain issues. According to Hill, Alabama courts granted collateral relief on claims of the former type, but not the latter.

In *Longmire v. State,* 443 So.2d 1265 (Ala.1982), the Alabama Supreme Court held the petitioner was entitled to an "out-of-time" appeal when his attorney failed to perfect a direct appeal of his conviction. *Longmire,* 443 So.2d at 1269. Following *Longmire,* Alabama courts regularly granted coram nobis petitioners out-of-time appeals when their attorneys failed to perfect an appeal. *See, Ex parte Sturdivant,* 460 So.2d 1210, 1212 (Ala.1984), *cert. denied,* 484 U.S. 862, 108 S.Ct. 180, 98 L.Ed.2d 133 (1987); *Rodgers v. State,* 453 So.2d 769, 770 (Ala.Crim.App.1984); *Peterson v. State,* 428 So.2d 201, 202 (Ala.Crim.App.1983). Hill argues Alabama courts deemed the failure to perfect an appeal a trial error rather than an appellate error. Thus, in Hill's view, Alabama courts would grant relief on these claims because they were *not* attributable to appellate counsel.

The district court cited *Longmire* in concluding claims of ineffective assistance of counsel were cognizable in coram nobis proceedings in 1985. Hill contends the court erred in relying on *Longmire* because his claim is not a

As these cases indicate, Alabama courts reviewed claims based on alleged errors of appellate counsel prior to Hill's filing his coram nobis petition in December 1985. In *Dawson v. State,* a case decided five months before Hill filed his coram nobis petition, the

"*Longmire* " claim: he does not contend his attorneys erred in failing to timely perfect an appeal. Rather, he faults his attorneys for not raising a particular claim—a challenge to the trial court's reliance on two aggravating circumstances.

Hill's distinction between "*Longmire* " claims and claims based on other appellate errors is not supported by Alabama case law. His argument ignores the cases cited above in which Alabama courts entertained coram nobis claims premised on errors of appellate counsel occurring *after* a timely appeal had been perfected. Although the courts in these cases did not state generally that claims of ineffective assistance of appellate counsel were within the bounds of coram nobis, neither did the courts dismiss these claims as being beyond the scope of the writ. We do not agree with Hill's suggestion that a state court had to affirmatively recognize the viability of an ineffective assistance of appellate counsel claim on coram nobis for him to be held accountable for omitting it from his petition.

Hill's argument also mischaracterizes the decision in *Longmire.* Contrary to Hill's suggestion, the case did not create a distinct subclass of ineffective assistance of counsel claims cognizable on coram nobis because the errors were deemed errors of trial counsel rather than appellate counsel. In *Jones v. State,* 495 So.2d 722 (Ala.Crim.App.1986), the court of appeals reviewed a coram nobis claim based on an attorney's failure to perfect a direct appeal by timely filing a copy of the trial transcript with the appeals court. *Jones,* 495 So.2d at 723. Although the court cited *Longmire* for support in granting an out-of-time appeal, it did not reason it could do so only because the petitioner presented a trial counsel claim. *See id.* at 723-25. Instead, citing *Evitts,* it noted defendants have the right to effective assistance of appellate counsel. *Id.* at 724. The *Jones* court further reasoned "the failure of counsel to perfect an appeal, resulting in the foreclosure of state appellate review, is a denial of constitutionally effective counsel." *Id.* Contrary to Hill's reading of *Longmire, Jones* suggests that Alabama courts granted out-of-time appeals in failure to perfect cases because such an error was *per se* ineffective assistance—regardless of whether it was considered error at the trial or appellate level.

court stated "[t]he improper denial of a defendant's constitutional rights to appeal or to the effective assistance of counsel on appeal constitutes proper grounds for coram nobis." *Dawson,* 480 So.2d at 19. If the failure of McDougal and Boyce to challenge the aggravating circumstances was as egregious an error as Hill now makes it out to be, then he should have been aware of the error at the time he filed his coram nobis petition. From the United States Supreme Court's decisions in *Evitts, Anders,* and *Strickland,* Hill knew he was entitled under the Constitution to effective assistance of appellate counsel. Had Hill filed this claim, the Alabama courts would have reviewed its merits.[15]

We therefore disagree with Hill's reliance on *Cannon* 's dicta to argue the Alabama coram nobis court would not have entertained his claim of ineffective assistance of appellate counsel. Since Hill has failed to show cause or manifest injustice excusing the procedural default of this claim, he was not entitled to an evidentiary hearing in the district court.

C. *Beck Claim*

Hill was convicted of capital murder under Ala.Code § 13-11-2(a) (1975) (repealed) which precluded Alabama courts from instructing juries on lesser included offenses in capital cases. In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court found the preclusion clause of Ala.Code

---

[15]Indeed, Alabama courts entertained an ineffective assistance of appellate counsel claim in a coram nobis petition filed by another Alabama death row inmate six months before Hill filed his petition. *See Waldrop v. State,* 523 So.2d 475, 476 (Ala.Crim.App.1987), *cert. denied,* 488 U.S. 871, 109 S.Ct. 184, 102 L.Ed.2d 154 (1988); *Waldrop v. Thigpen,* 857 F.Supp. 872, 889 (N.D.Ala.1994), *aff'd,* 77 F.3d 1308 (11th Cir.1996).

§ 13-11-2(a) unconstitutional because under the Eighth Amendment a jury must be "permitted to consider a verdict of guilt of a lesser included non-capital offense" in cases in which "the evidence would have supported such a verdict." 447 U.S. at 627, 100 S.Ct. at 2384. Hill claims his conviction was unconstitutional because he was precluded from pursuing a defense based on a lesser-included, non-capital offense.

In *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Supreme Court clarified when *Beck* requires a defendant receive a new trial. Under *Hopper,* a defendant is entitled to a new trial if he can either: (1) demonstrate there was evidence produced at trial upon which a conviction for a lesser-included offense could have been based; or (2) suggest a plausible alternative theory that might have been made in the absence of the preclusion clause that was not contradicted by his trial testimony. *Hopper,* 456 U.S. at 611-13, 102 S.Ct. at 2053-54; *Richardson,* 864 F.2d at 1538. Hill does not contend the evidence produced at trial would have supported a lesser-included offense instruction. Instead, he suggests that in the absence of the preclusion clause, he would have introduced evidence that he is mentally impaired, suffers from brain damage, and was intoxicated at the time of the shootings. This evidence, according to Hill, would have entitled him to instructions on non-capital murder or even manslaughter.[16]

---

[16]Much of the evidence of Hill's mental impairment and alleged intoxication, together with McDougal's affidavit stating he would have followed a strategy of attacking the *mens rea* required for capital murder, was filed after the district court issued its final judgment. Since this evidence was not timely

Hill's theory, however, conflicts with his testimony at his 1979 trial. On direct examination, Hill testified that he never entered Ms. Hammock's home on the afternoon of the shootings. According to Hill, when he drove up to the house that afternoon, Toni met him outside carrying his pistol and her clothes. She returned his pistol, placed her clothes in the car, and asked him to drive her to Atlanta. At that point, they took off with Hill apparently unaware of the homicides. The unmistakable thrust of Hill's testimony was that Toni committed the murders and he did not.

According to Hill's sworn testimony at trial, he took no part in the shooting of Ms. Hammock and the Tatums. Hill's belated alternative theory that he shot them but was mentally impaired or intoxicated at the time is contradicted by his trial testimony. Hill is therefore not entitled to relief under *Hopper*. *See Richardson,* 864 F.2d at 1538-39.

D. *Swain Claim*

Hill alleges the prosecutor in his 1979 trial followed his historical practice of using peremptory challenges to strike African-American citizens from the jury panel based on their race. Hill contends this prosecutor's intentional discrimination against African-Americans in the selection of the jury violated his Fourteenth Amendment rights as stated in *Swain v. Alabama.* Hill did not raise a *Swain* claim at trial, on direct appeal, or in either of his state collateral petitions. The district court found

---

presented to the district court, the court properly ignored it in rejecting Hill's *Beck* claim.

Hill had procedurally defaulted his *Swain* claim under Alabama law. The court dismissed the claim after concluding Hill had failed to establish either cause and prejudice or manifest injustice excusing the default. Citing *Murray v. Carrier,* Hill argues the ineffective assistance of his counsel at trial and appeal excuses the default of his *Swain* claim.

Hill raised his ineffectiveness-as-cause argument for the first time in his motion to alter or amend the district court's final judgment. Since this argument was not fairly presented to the district court, we will not grant relief on this basis. Even assuming this argument was properly before us, we find it to be without merit.

In *Carrier,* the Supreme Court recognized that when counsel is ineffective under the standard of *Strickland v. Washington,* this may serve as cause within the meaning of *Wainwright v. Sykes. Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. The Court cautioned, however, that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 488-89, 106 S.Ct. at 2645-46. Hill acknowledges *Carrier* 's exhaustion requirement, but claims it does not prevent his citing his counsel's ineffectiveness as cause. Hill notes procedural default and exhaustion are distinct concepts within habeas corpus law. He contends *Carrier* allows petitioners to rely on ineffective assistance as cause whenever an independent claim has been exhausted regardless of whether it is also procedurally defaulted. The State counters Hill should not be

permitted to rely on his counsel's performance as cause when he has procedurally defaulted on his ineffective assistance claims in state court.

Initially, we note the issue of whether a procedurally-defaulted claim of ineffective assistance of counsel can serve as cause under *Carrier* has not yet been decided in this circuit. *See Jackson v. Herring,* 42 F.3d 1350, 1358-59 n. 7, 1362 (11th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 38, 132 L.Ed.2d 919 (1995). Citing *Hollis v. Davis,* 941 F.2d 1471 (11th Cir.1991), *cert. denied,* 503 U.S. 938, 112 S.Ct. 1478, 117 L.Ed.2d 621 (1992) and other cases, Hill states this Court has limited *Carrier* to barring from serving as cause only unexhausted as opposed to procedurally-defaulted claims of ineffective assistance. We do not read *Hollis* or any other precedent in such a manner.

In *Hollis,* the petitioner argued his trial counsel's ineffective assistance served as cause to excuse the default of a claim that African-American citizens had been excluded from the grand and petit juries that indicted and convicted him. *Hollis,* 941 F.2d at 1476-79. Although the petitioner in *Hollis* had not exhausted his ineffective assistance claim in Alabama state court, we concluded he could rely on this cause argument because it would have been futile for him to return to state court to press this claim. *Id.* at 1479. The petitioner had filed at least three previous *pro se* collateral petitions in state court. *Id.* at 1473. Each time the state court dismissed the petition without reaching the merits. *Id.* We noted the petitioner's illiteracy, when combined with his "inscrutable handwriting," had "greatly hindered"

his attempts to obtain post-conviction relief in the state courts. *Id.* Given these "particular facts" in *Hollis,* we concluded it would have been futile for the petitioner to exhaust his ineffective assistance of counsel claim as required by *Carrier. Id.* at 1479.

We do not see how our decision in *Hollis* has any bearing on the question of whether Hill can cite as cause a procedurally-defaulted claim of ineffective assistance of counsel. Unlike Hill, the petitioner in *Hollis* never defaulted his claim of ineffective assistance in state court. Furthermore, we found it would have been futile for the petitioner in *Hollis* to exhaust an ineffective assistance of counsel claim given the unique circumstances of his *pro se* status in state court, his illiteracy, and the fact that on three separate occasions he had failed to get an Alabama court to review the merits of his petition. Such circumstances do not exist in this case. Neither *Hollis* nor the rest of our precedent evince a reluctance to find *Carrier* prohibits petitioners from relying on procedurally-defaulted ineffective assistance claims.[17] To the contrary, we conclude *Carrier* and the rest of the Supreme Court's jurisprudence on procedural default dictate that procedurally-defaulted claims of ineffective

---

[17]Hill also cites us to *Orazio v. Dugger,* 876 F.2d 1508 (11th Cir.1989); *Bundy v. Dugger,* 850 F.2d 1402 (11th Cir.1988); and *Walker v. Davis,* 840 F.2d 834 (11th Cir.1988) as indicating this Court has limited *Carrier* to requiring only that petitioners exhaust their ineffective assistance claims in state court. While these cases addressed the question of exhaustion under *Carrier,* none of them concerned procedurally-defaulted ineffective assistance claims. It strains both the facts and reasoning in these cases to say we have limited *Carrier* in the manner Hill suggests.

assistance *cannot* serve as cause to excuse a default of a second claim.

In *Justus v. Murray,* 897 F.2d 709 (4th Cir.1990), the Fourth Circuit rejected a similar effort by a petitioner to use a procedurally-defaulted ineffective assistance of counsel claim to excuse the default of several underlying "substantive" claims. The *Justus* court recognized *Carrier* 's reasoning is predicated on a "sense of respect for the procedural default rule in the appellate context." *Justus,* 897 F.2d at 714. While the procedural default rule may further different goals than the exhaustion doctrine, this does not mean these goals are not implicated when a federal court reviews a procedurally-defaulted claim of ineffective assistance when it is asserted as cause under *Carrier. See id.* at 713.

The procedural default rule has its foundations in the principles of comity and judicial efficiency. *See Sykes,* 433 U.S. at 87-88, 97 S.Ct. at 2506-7. To allow a federal court to review a defaulted claim of ineffective assistance under the guise of a cause analysis would ignore the fact that under the procedural rules of Alabama and other states, the petitioner has forfeited his right to have that claim reviewed by a state court. This hardly amounts to respect for a state's right to enforce its procedural rules. This is especially troubling given that almost any procedural default of a constitutional claim can be characterized as an attorney's error. Using a procedurally-defaulted ineffective assistance claim to open the door to review of underlying, defaulted, "substantive" claims would render state procedural bars meaningless in many cases. We do not believe *Sykes* and *Carrier*

countenance such a result.

We therefore agree with the Fourth Circuit that *Carrier* stands for more than a petitioner must simply exhaust a claim of ineffective assistance before raising it as cause. Instead, *Carrier* requires a claim of ineffective assistance be both exhausted *and* not defaulted in state court before it can be asserted as cause. *Justus,* 897 F.2d at 714. If the ineffective assistance claim is defaulted, then a petitioner must demonstrate independent cause and prejudice excusing the default of the ineffectiveness claim before that claim can be asserted as cause in relation to a second, substantive claim. *Id.*

In the case before us, Hill cannot meet this burden. Hill defaulted his claims of ineffective assistance of trial and appellate counsel in the Alabama courts, and he has not shown cause or prejudice excusing this default.[18] Hill therefore cannot rely on his attorneys' alleged ineffectiveness to excuse the procedural default of his *Swain* claim.

### III. CONCLUSION

We have carefully reviewed the record and briefs of the parties. We are satisfied the district court did not err in dismissing Hill's claims and denying the petition.

AFFIRMED.

---

[18]As discussed earlier, we find Hill's arguments for cause excusing his default of his claims of ineffective assistance of trial and appellate counsel unavailing. Alabama's successive petition rule is an adequate and independent state ground supporting default of these claims, *see* section II.A.1, *supra,* and the alleged deficient performance of his coram nobis counsel cannot serve as cause, *see* section II.A.2, *supra.* As for Hill's appellate counsel claim, this claim was cognizable in Alabama coram nobis proceedings back in 1985. *See* section II.B, *supra.*