**Herbert Lee RICHARDSON, Petitioner–Appellant,**

v.

**Willie JOHNSON, Warden, Holman Unit, and Fred Smith, Commissioner, Alabama Department of Corrections, Respondents–Appellees.**

No. 88–7201.

United States Court of Appeals, Eleventh Circuit.

Jan. 17, 1989.

As Modified on Denial of Rehearing Feb. 27, 1989.

Arthur J. Madden, III, Mobile, Ala., for petitioner-appellant.

Charles Graddick, Atty. Gen., Ed Carnes, Montgomery, Ala., for respondents-appellees.

Before KRAVITCH, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

Herbert Lee Richardson appeals the district court's denial of his petition for habeas corpus under 28 U.S.C.A. § 2254. Concluding that he is not entitled to relief, we affirm the district court.

### I. Facts

At about 6:00 A.M. on August 16, 1977, a bomb exploded on the front porch of Doris Wyms' home in Dothan, Alabama, killing Rena Mae Collins, a child of ten. The child was Wyms' niece and had spent the previous night at her aunt's home. The only witness to the explosion, a twelve year old friend of the decedent, testified that the two girls had come out to the porch that morning and had seen what looked like a drink can in a plastic bag. The device detonated when the decedent pulled her arm back as she prepared to throw the object away.

The evidence clearly reflects that Richardson was responsible for the bombing. Wyms had ended a relationship with Richardson in May 1977, but he continued to harass and threaten her and her family. One week before Rena Mae was killed, Richardson had thrown an object from his car into Wyms' yard where it exploded on the ground. On August 15, 1977, Wyms received a threatening note from Richardson. Rena Mae's brother testified that early on the morning of August 16th, he saw Richardson watching Wyms' house. Richardson was employed as an electrician. A week before the explosion at issue here, he told two co-workers that he had made a bomb and set it off in a field. A search of his car and his home revealed the materials necessary for making bombs, like the one that killed the child. A number of the items recovered during the searches matched fragments of the bomb found at Wyms' house.[1] Police also found a library book entitled *Explosives and Bomb Disposal Guide* at Richardson's residence.

At his trial, Richardson offered evidence of an alibi and claimed that someone else had committed the act. Richardson was convicted by a jury of capital murder and sentenced to death in 1978. The Alabama Court of Criminal Appeals found the sentence defective because the sentencing judge had failed to enter written findings, and remanded for resentencing. 376 So.2d 205 (Ala.Crim.App.1978). The trial court again imposed a sentence of death and the Alabama Supreme Court affirmed. 376 So.2d 228 (Ala.1979). Richardson filed his first coram nobis petition in 1982, which was denied. 419 So.2d 289 (Ala.Crim.App. 1982), *cert. denied,* No. 81–937 (Ala.1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983).

He was then scheduled for execution on October 25, 1985, but the Supreme Court of Alabama entered a stay of execution on October 23rd. After an evidentiary hearing on Richardson's ineffective assistance of counsel claim, a state circuit court judge denied Richardson's second petition for a writ of coram nobis which had been filed on October 17, 1985. The Court of Criminal Appeals affirmed and the Alabama Su-

preme Court denied certiorari. Richardson then amended a habeas petition filed earlier in federal district court which had been stayed pending exhaustion of state remedies. After holding an evidentiary hearing on Richardson's lesser included offense claim, the district court denied habeas corpus relief.

On appeal, Richardson claims that he is entitled to habeas relief because of the following errors: (i) the trial judge was constitutionally required to give a lesser included offense instruction to the jury; (ii) the jury instructions on intent and malice violated due process; (iii) the trial judge improperly considered the jury's death verdict as a factor in imposing the death sentence; (iv) the use of uncounseled misdemeanor convictions by the trial judge in assessing potential mitigating factors at sentencing violated his Eighth Amendment rights; (v) he was denied effective assistance of counsel because of counsel's failure to object to the sentencing judge's consideration of the uncounseled convictions; and (vi) the "especially heinous, atrocious or cruel" aggravating factor was applied by the sentencing judge without a narrowing construction, rendering it unconstitutionally vague under the Eighth Amendment. We shall address each of his claims in turn.

## II. *Lesser Included Offense Instruction*

Richardson was convicted of violating Ala.Code § 13–11–2(a)(9) (repealed), which made it a capital offense to explode a device near an inhabited dwelling "when a person is intentionally killed by the defendant because of said explosion."[2] Richardson claims that his due process right was violated because the trial judge erred in not instructing the jury on possible lesser included offenses for which Richardson could have been convicted based on the evidence produced at trial. The district court found no due process violation. We agree.

In *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Supreme Court clarified its holding, announced in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on the constitutionality of Ala.Code § 13–11–2

---

**1.** A bomb and explosives expert testified at trial that he had reconstructed the bomb from fragments found at the scene. The bomb was probably an anti-movement device specifically meant to harm a person instead of simply damaging property. Such a bomb is meant to explode when a person picks it up to move it,

which insures that the victim will be in close proximity when the explosion occurs.

**2.** The 1981 repealing statute expressly saved the 1975 statute for application to crimes occurring before July 1, 1981. Ala.Code § 13A–5–57 (1981).

and its prohibition on lesser included offense instructions. Under *Beck*, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper*, 456 U.S. at 611, 102 S.Ct. at 2054 (emphasis in original). The Supreme Court also stated that due process would be violated when the defendant suggests a "plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial." *Hopper*, 456 U.S. at 613, 102 S.Ct. at 2054 (footnote omitted). Alabama courts have read *Hopper* to require a two-part inquiry for reviewing courts: (i) was there any evidence presented at trial upon which a conviction of a lesser included offense could have been based;[3] (ii) if not, did the defendant suggest a plausible alternative theory that might have been made in the absence of the preclusion clause, that was not contradicted by his trial testimony? *Cook v. State*, 431 So.2d 1322, 1324 (Ala.1983).

█ Richardson urges this Court to consider the lesser included offense contained in Ala.Code § 13–2–60, which makes it a crime wilfully to set off an explosion "under or dangerously near ... any inhabited dwelling house." This section, or in the alternative its companion Section 13–2–61, is a material element of a Section 13–11–2(a)(9) violation. The fact that a person was intentionally killed as a result of the explosion made this a capital crime.[4] The evidence presented as to Richardson's intent in placing the bomb on the porch is thus crucial to our determination of whether he was unconstitutionally deprived of a lesser included offense instruction.

Throughout the trial, the state characterized the bomb as an "anti-personal" device, which was meant to be triggered by the movement of the intended victim. Although the actual switching device that detonated the bomb was not found in the debris, Richardson had an empty box of such switches at his house. Further, cardboard "spacers" found at Richardson's house and a spring found in the debris suggested that the person who made the bomb had carefully constructed the bomb with safety devices to insure his movement in transporting and placing the bomb would not cause it to detonate accidentally. Finally, the movement of the victim as reported by the young girl who witnessed the explosion was consistent with the type of motion that is necessary to cause such bombs to explode. In order to convict Richardson of a Section 13–2–60 offense, the jury would have had to disbelieve the state's evidence that Richardson intended to kill when he planted the anti-personal bomb on the porch. *See Reddix v. Thigpen*, 805 F.2d 506, 511 n. 1 (5th Cir.1986) (defendant's challenge to the evidence of intent should be weighed in light of all evidence presented at trial); *Aldrich v. Wainwright*, 777 F.2d 630, 638 (11th Cir. 1985), *cert. denied*, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 297 (1986) (same). In this situation, there was insufficient evidence presented at trial upon which a conviction of a lesser included offense could have been based.

Richardson also fails to assert a plausible alternative theory that he would have presented in the absence of the preclusion clause. He testified at trial that he had neither made a bomb nor put one on the porch. Only at the federal habeas hearing in January 1988 did he admit that he had constructed and placed the bomb that killed the child. He testified then that the bomb was not meant to explode, but was just a stink bomb. He claims that his decision to perjure himself at trial was a result of fear that any admission of culpability at that stage would have resulted in a possible death sentence under the then-existing law. However, his later testimony contradicts his previous trial testimony. Thus, Richardson cannot be said to have been deprived of due process at the trial stage. *See Ex Parte Wright*, 494 So.2d 745, 747

---

**3.** Although under *Hopper* and *Beck* due process protects the defendant's right to a lesser included offense instruction if the evidence warrants such an instruction, the standard for reviewing whether such an instruction should have been given in a state proceeding is determined by state law. *Hopper*, 456 U.S. at 612, 102 S.Ct. at 2054. This Court must review the state proceedings to determine whether "there is any reasonable theory from the evidence which would sup-

port the [lesser offense] position." *Fulghum v. State*, 291 Ala. 71, 277 So.2d 886, 890 (1973).

**4.** Alabama subscribes to the doctrine of "transferred intent." Under this doctrine, even if the bomb was meant for Doris Wyms and killed the child instead, Richardson is still guilty of intentional homicide. *Winton v. State*, 229 Ala. 642, 159 So. 62, 63 (1935); *Tolen v. State*, 49 Ala.App. 353, 272 So.2d 279, 281 (Ala.Crim.App.1972), *cert. denied*, 289 Ala. 752, 272 So.2d 281 (1973).

(Ala.1986), *cert. denied,* 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987) (later theory not plausible when "speculative" and "directly opposed to the testimony presented at trial"); *Cook,* 431 So.2d at 1325 (same). Having reviewed Richardson's claim under both prongs of the *Hopper* standard, we conclude that he has not established his right to jury instructions on the lesser included offense contained in Ala.Code § 13–2–60.[5]

### III. *Sandstrom and Winship Claims*

Richardson challenges the trial court's instructions to the jury, claiming that the malice charge altered the burden of proof and that the intent charge was legally insufficient. He therefore alleges a violation of his due process rights. *See Sandstrom v. Montana,* 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979) (due process prohibits state from using evidentiary presumptions that shift burden of proof in a jury charge); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (due process requires proof beyond a reasonable doubt with respect to each element of crime).

█ The district court found these claims barred by procedural default.[6] Richardson's challenges to the jury instructions were not raised at trial or on direct appeal. They were first raised at his second coram nobis hearing in 1985, at which point the state court held they were procedurally barred. Claims that are procedurally barred from state coram nobis review are procedurally barred from federal habeas review. *Magwood v. Smith,* 791 F.2d 1438, 1444 (11th Cir.1986).

Richardson has shown no cause for or prejudice from the default that would suggest this Court should reach the merits of his claim. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). His trial attorney testified that he did not object to the jury instructions because he did not see any error in them. Further, even if Richardson's appellate counsel recognized the issues, he apparently chose not to pursue them. Attorney error does not automatically establish cause sufficient to avoid procedural default. *See Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."); *Presnell v. Kemp,* 835 F.2d 1567 (11th Cir. 1988) (failure of attorney to protest allegedly unconstitutional jury instructions is not cause). Richardson does not show prejudice arising from the allegedly erroneous instructions except to suggest that the state's showing of intent was weak and that the jury might have been affected by

---

5. Richardson also argues that Ala. Code § 13–1–70 (repealed) established a lesser included offense of Ala. Code § 13–11–2(a)(9) (repealed). Ala. Code § 13–2–60 (repealed) made it a crime to cause an explosion near an inhabited dwelling, and Section 13–11–2(a)(9) stated that the perpetrator must have intended for a victim to be killed when he caused an explosion near an inhabited dwelling. The definition of first degree murder contained in Section 13–1–70 included homicide "perpetrated by any act greatly dangerous to the lives of others and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life." Richardson argues that the killing of a person by placing a bomb near an inhabited dwelling without the specific intent to kill violates this portion of Section 13–1–70 without violating Section 13–11–2(a)(9). Thus, he claims that Section 13–1–70, when read in conjunction with Section 13–2–60, establishes a lesser included offense of Section 13–11–2(a)(9), and that he was entitled to a

jury charge on that offense under the dictates of *Beck.*

Richardson has cited no Alabama case which confirms that the Alabama courts viewed the interplay between Sections 13–1–70, 13–2–60 and 13–11–2(a)(9) this way. Assuming *arguendo* that the Alabama courts would have accepted this reading of Section 13–1–70, Richardson's claim fails because of the overwhelming evidence that he did have intent to kill when he placed the bomb on the victim's front porch. *See Hopper,* 456 U.S. at 613, 102 S.Ct. 2054 (evidence of intent negated defendant's claim that evidence supported lesser included offense instruction with no intent element).

6. The district courts conclusion that the claims were procedurally barred came in an order dated April 15, 1988, which amended the original district court opinion of March 22, 1988. In the opinion, the district court found that the claims afforded Richardson no relief on the merits.

different instructions.[7] Richardson has not met the burden of overcoming the procedural bars to these claims and is denied relief on these grounds.

### IV. *Baldwin Claim*

■ Richardson challenges the district court's finding that the trial judge did not consider the jury verdict as a factor in his decision. At the sentencing hearing on remand, the trial judge asked whether the parties were ready to proceed "as to whether or not the death penalty should be upheld or [Richardson's] sentence commuted to life in prison without parole."[8] Richardson alleges that, in making this statement, the trial judge demonstrated that he viewed the jury's death sentence as a "point of departure" for his own sentencing decision.

In *Baldwin v. Alabama*, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985), the Supreme Court held Alabama's death penalty sentencing procedure facially constitutional, but reserved the question of constitutionality in cases where the judge "consider[s] the jury's verdict ... as a factor that weigh[s] in favor of the imposition of the death penalty." 472 U.S. at 386 n. 8, 105 S.Ct. at 2735 n. 8. However, as the written findings that resulted from this second sentencing show, the trial judge considered only the aggravating and mitigating circumstances in his decision. *Richardson*, 376 So.2d at 228 (affirming results of remanded sentencing hearing); *see also Baldwin*, 472 U.S. at 385, 105 S.Ct. at 2735 (similar language used by sentencing judge is not evidence of deference to jury's decision). We agree with the findings of the district court that the sentencing judge did not act in violation of *Baldwin*.

### V. *Use of Allegedly Uncounseled Convictions in Sentencing*

■ Richardson's next two claims, violation of his Eighth Amendment rights and ineffective assistance of counsel, turn on the use of two allegedly uncounseled misdemeanor convictions by the trial judge in assessing potential mitigating factors at Richardson's sentencing. After the jury returned a verdict of guilt, the trial judge conducted a sentencing hearing pursuant to Ala.Code § 13–11–3 (1975). A presentence report revealed that Richardson had two prior convictions in North Carolina for assaults on women. The court found that these convictions negated the mitigating circumstance urged by Richardson of "no significant history of prior criminal activity." Ala.Code § 13–11–7(1) (1975). Finding no mitigating circumstances and two aggravating circumstances ("knowingly creating a great risk of death to many persons" and that the felony was "especially heinous, atrocious and cruel"), the court accepted the jury's recommendation of the death penalty. *Richardson*, 376 So.2d at 226–27.

Richardson now claims that the use of these uncounseled convictions in the sentencing determination denied him statutory mitigation, subjecting him to cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights. However, he did not raise this claim until his second coram nobis hearing, at which time the state court found it was barred from review because of procedural default. We agree with the district court that this issue has been defaulted and proceed to discuss whether Richardson has demonstrated adequate cause and prejudice which would enable this Court to address the merits of the claims under *Sykes*, 433 U.S. at 87, 97 S.Ct. at 2506.

Richardson argues that his failure to contest use of these convictions at his sentencing was caused by ineffective assistance of his trial counsel. *See Carrier*, 477 U.S. at

---

**7.** The state acknowledged, in its brief, that one sentence in the jury charge may have violated *Sandstrom*. However, in the context of this case, this was harmless error. First, the instruction applied to an element of the crime, malice, which was not contested in the case. Malice was defined by the trial judge as "the doing of an unlawful act without legal justification or extenuation." While intent to kill was denied by the defendant at trial, he did not attempt to prove any legal justification or excuse for his actions. Further, there was overwhelming evidence in the case that "whoever killed the victim did so with intent and malice." *Davis v. Kemp*, 752 F.2d 1515, 1521 (11th Cir.), *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706, 707 (1985).

**8.** A similar remark made by the trial judge at the first sentencing is irrelevant because the state is attempting to carry out only the result of the sentencing achieved on remand.

486–88, 106 S.Ct. at 2644–46 (defendant must bear risk of attorney error that results in procedural default unless counsel's performance is constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In order to find cause, we must find, upon applying *Strickland* to this case, that the trial attorney's decision not to challenge the admissibility of the convictions was "outside the wide range of professionally competent assistance," 466 U.S. at 690, 104 S.Ct. at 2066, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," 466 U.S. at 694, 104 S.Ct. at 2068. The district court found that Richardson failed to meet the stringent standard established by *Strickland* and we agree.

Richardson's trial attorney knew that the convictions might have been obtained in violation of *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972) (Sixth Amendment right to counsel attaches if misdemeanor conviction results in imprisonment), and *United States v. Tucker*, 404 U.S. 443, 447–49, 92 S.Ct. 589, 591–93, 30 L.Ed.2d 592 (1972) (sentence giving explicit consideration to prior convictions unconstitutionally obtained because defendant not represented by counsel will be remanded for reconsideration). However, Richardson's attorney decided not to contest the admissibility of the prior convictions because he did not want to risk having his client further discredited by an inquiry into the circumstances of the charges, especially since the convictions were for assaults on women.[9] He testified at the 1985 coram nobis hearing that he

made a strategic decision to try and show that Richardson had no *significant* prior criminal record; therefore he did not want to focus attention on the convictions or the events leading up to them.[10] We agree with the district court that the attorney's decision was not professionally incompetent.

Further, it is not clear that, had the attorney actively challenged the convictions, the result of Richardson's sentencing would have been different. Even if the sentencing judge could not rely on these North Carolina convictions because they were unconstitutionally obtained, evidence of Richardson's past criminal "activity" would have been admissible if the sentencing judge had found such information reliable. *See Tucker v. Kemp*, 762 F.2d 1480, 1487 (11th Cir.) (en banc), *vacated*, 474 U.S. 1001, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985), *reinstated*, 802 F.2d 1293 (1986), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987) (when sentencing, court can consider evidence of criminal indictments and even evidence of criminal activities for which no charges have been filed if evidence is reliable); *cf. Williams v. Lynaugh*, 814 F.2d 205, 207–08 (5th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987) (evidence of "unadjudicated criminal conduct," confirmed by witnesses, is admissible in capital sentencing trial).[11] Had Richardson's attorney objected to admission of the convictions, the state might have attempted to question Richardson directly about the circumstances leading up to his convictions. Because any reliable evidence of the underlying criminal activity leading up to the convictions could have been considered by the

9. The records used to show Richardson's past convictions do not show whether he was provided with counsel. His present counsel's attempts to search the North Carolina records for a definitive answer have proved futile. The sole evidence that Richardson lacked counsel was his testimony at his second coram nobis proceeding in 1985 that he had not been represented by counsel and that he had not waived his Sixth Amendment right to counsel.

10. In challenging his attorney's professional competence, Richardson claims that the attorney did not sufficiently investigate the circumstances of Richardson's prior convictions and, thus, that his decision not to contest their admissibility cannot be deemed a strategic deci-

sion taken after a reasonable investigation into alternatives. *King v. Strickland*, 748 F.2d 1462, 1464 (11th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985). However, Richardson does not suggest how further investigation would have altered the attorney's decision. The attorney devised his strategy for the sentencing hearing with the knowledge that the convictions might have been unconstitutionally obtained. Proof that the convictions were in fact unconstitutionally obtained would not likely have changed the attorney's strategy.

11. Contrary to Richardson's suggestion at oral argument that *Johnson v. Mississippi*, —— U.S. ——, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), weakens the precedential value of *Tucker v. Kemp*, we find that *Johnson* supports this

trial court, the attorney's failure to object to admission of the actual convictions would not necessarily have changed the outcome of the judge's assessment of Richardson's past criminal activity. The state had argued at trial that Richardson acted with intent to harm his former girlfriend, Doris Wyms. Any reliable evidence of conduct that led to Richardson's being arrested and charged *twice* in the past with assaults on women could have influenced the judge in his sentencing decision. Under these circumstances, we cannot conclude that but for counsel's decision not to challenge admission of the convictions, the result of Richardson's sentencing would have been different. *Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071.

We agree with the district court that Richardson has not demonstrated the level of professional incompetence and prejudice required to sustain an ineffective assistance of counsel claim. Given this conclusion, his attempt to prove cause for his procedural default of his Eighth Amendment challenge fails as well.

## VI. *Maynard Claim*

The sentencing judge found as one of two aggravating factors that the offense in this case was "especially heinous, atrocious or cruel." *See* Ala.Code § 13–11–8 (1975). This holding was affirmed by the Alabama Court of Criminal Appeals and the Alabama Supreme Court. Richardson now claims that since the Alabama courts have not consistently applied a narrowing construction of this aggravating circumstance, its application in this case violates the Eighth and Fourteenth Amendments. *See Maynard v. Cartwright,* —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (Okla-

homa statutory aggravating circumstance of "especially heinous, atrocious or cruel" held unconstitutionally vague as applied in capital cases because Oklahoma courts have adopted no limiting construction).

Richardson did not object to use of this aggravating circumstance at the sentencing hearing, nor did he raise the issue on appeal or in either of his two coram nobis petitions. Therefore, the district court judge found the claim procedurally barred.[12] Richardson emphasizes that because the Alabama Court of Criminal Appeals expressly affirmed the propriety of the sentence on remand, 376 So.2d at 228, the issue is not procedurally barred. However, the issue, if any, preserved by the state court's summary affirmance of the sentence was that Richardson's crime was especially heinous, atrocious and cruel within the state law definition of those terms. The claim that the aggravating circumstance is unconstitutional was not discussed by any of the state courts and remains procedurally barred. As Richardson has offered no cause for his failure to raise his claim earlier and has not discussed the potential prejudice arising therefrom, this Court rejects this allegation of error.[13]

## VII. *Conclusion*

We AFFIRM the district court's denial of Richardson's petition.

---

Court's language in *Tucker.* In *Johnson,* the Supreme Court reiterated its conclusion that sentencing may not be based on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process." 108 S.Ct. at 1986 (citing *Zant v. Stephens,* 462 U.S. 862, 887 n. 24, 103 S.Ct. 2733, 2748 n. 24, 77 L.Ed.2d 235 (1983)). The Court emphasized the distinction between a conviction subsequently rendered invalid and the underlying conduct that gave rise to the conviction, suggesting that evidence of underlying conduct may be considered by the sentencing authority even when the conviction itself may not be. *Id.*

**12.** This conclusion appears in the April 15th order which supersedes the district court's March 22 holding in favor of the state on the merits of this issue.

**13.** Richardson cannot claim the "novelty of his legal claim" as cause for not having raised the issue earlier, *see Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986), because the Supreme Court in *Cartwright* specifically based its holding on a reading of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), which was released before Richardson filed either of his two coram nobis petitions.