**Angel BREARD, Petitioner,**

v.

**J.D. NETHERLAND, Warden, Respondent.**

Civil Action No. 3:96CV366.

United States District Court, E.D. Virginia, Richmond Division.

Nov. 27, 1996.

1258

Michele J. Brace, Mark Evan Olive, Virginia Capital Representation Resource Center, Richmond, VA and Jill Misage, Franklin Brawner Greer, William G. Broaddus, Alexander H. Slaughter, Dorothy Campbell Young, McGuire, Woods, Battle & Boothe, Richmond, VA, for petitioner.

Donald Richard Curry, Office of the Attorney General, Richmond, VA, for respondent.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on respondent's motion to dismiss the petition for a writ of habeas corpus. For the reasons set forth below, the Court GRANTS the motion.

## I. Background

Mr. Breard was convicted of the rape and stabbing death of thirty-nine year old Ruth Dickie. The Virginia Supreme Court, affirming Breard's conviction and sentence on direct appeal, stated the facts of the case as follows:

In February 1992, the victim, Ruth Dickie, resided alone at 4410 North Fourth Road, Apartment 3, in Arlington County. She was 39 years of age and unmarried. Breard was living in an apartment a short distance from Dickie's apartment.

About 10:00 or 10:15 p.m. on February 17, 1992, Dickie left an Arlington restaurant. About 10:30 or 10:45 p.m., Ann Isch, who lived in an apartment directly below Dickie's, heard Dickie and a man arguing loudly in the hall. Isch heard Dickie say, "[K]eep your hands off me." According to Isch, the arguing continued as she heard Dickie and the man enter Dickie's apartment. Almost immediately thereafter, when everything became quiet, Isch called the apartment complex maintenance man. Upon receiving a call, the maintenance man, Joseph King, went to Dickie's apartment. King knocked on the apartment door and heard "something that sounded like something being drug across the floor." After receiving no response in his knocking, King called the police.

When the police arrived, King gave them a master key. Upon entering the apartment, the police found Dickie lying on the floor. She was on her back, naked from the waist down, and her legs were spread wide. She was bleeding profusely and did not appear to be breathing.

The police observed a "shiny ... dried ... body fluid" on Dickie's pubic hair and on her inner thigh. Hairs were found clutched in her bloodstained hands and on her left leg. Dickie's underpants had been torn from her body. The police found Dickie's eyeglasses, without one lens, in the living room, and the missing lens was found under her body. A telephone receiver located near her head was covered with blood. In the room where Dickie's body was found, the police also found her shoes and her pants with some buttons missing. Dickie's purse was on the floor just inside the front door, and her set of keys was on the floor between her legs.

An autopsy revealed that Dickie had sustained five stab wounds to the neck. Two of the wounds would have caused her death.

The body fluid found on Dickie's pubic hair and inner thigh was subjected to a serological examination and identified as semen. No semen was detected on vaginal or anal swabs.

In the course of their investigation, the police obtained a sample of Breard's blood and samples of his head and pubic hair. The hair samples were subjected to microscopic examination, and the blood sample was subjected to enzyme testing and DNA analysis.

The foreign hairs found on Dickie's body were determined to be identical in all microscopic characteristics to the hair samples taken from Breard. The hairs found clutched in Dickie's hand were Caucasian hairs "microscopically like" Dickie's own head hair and bore evidence that they had been pulled from her head by the roots.

The semen found on Dickie's pubic hair matched Breard's enzyme typing in all respects. On all five of the genetic probes used in the DNA testing, Breard's DNA profile matched the DNA profile of the semen found on Dickie's body.

Breard is a native of Argentina, and his DNA profile occurs in only one in seventeen million members of the Hispanic population. Only 1.7% of the general population has Breard's enzyme typing.

At trial, Breard testified in his own defense. He stated that, on the night of February 17, 1992, he left his apartment armed with a knife because he thought he would "try to do someone," meaning that he "wanted to use the knife to force a woman to have sex with [him]." Breard admitted that he engaged Dickie in conversation on the street, followed her to her apartment, argued with her, and forced himself into her apartment. Breard also admitted that he stabbed Dickie, removed her pants, and got "on top of her." While

he was on Dickie, he heard someone knocking on the door. He "got scared," opened a kitchen window, jumped to the ground and fled. Breard also testified that, at the time, he believed that he was under a curse placed upon him by his ex-wife's father.

*Breard v. Commonwealth*, 248 Va. 68, 72–73, 445 S.E.2d 670, 673–74 (1994).

## II. Procedural History

Petitioner was indicted for attempted rape and for the capital offense of murder in the commission of, or subsequent to, rape or attempted rape. After a jury trial, he was found guilty on June 24, 1993. The jury sentenced Mr. Breard to ten years and a $100,000 fine for the rape and sentenced him to death for the capital murder. On August 22, 1993, the trial court conducted a sentencing hearing and entered an order reflecting the jury's verdict. Petitioner's execution date was set for February 17, 1994. The execution was stayed pending appeals.

The Supreme Court of Virginia affirmed the judgment on June 10, 1994. *Breard v. Commonwealth*, 248 Va. 68, 445 S.E.2d 670 (1994). On October 31, 1994, the United States Supreme Court denied Breard's petition for a writ of certiorari. *Breard v. Virginia*, —— U.S. ——, 115 S.Ct. 442, 130 L.Ed.2d 353 (1994).

The Circuit Court of Arlington County denied Breard's state habeas petition on June 29, 1995. The Supreme Court of Virginia refused his petition for appeal on January 17, 1996, and denied his petition for rehearing on March 1, 1996.

On April 25, 1996, Petitioner filed a motion in this Court for appointment of counsel and stay of execution. The Court granted the motion and directed Breard to file his petition by July 1, 1996.

## III. Claims Presented

Petitioner attacks his conviction and sentence on the following grounds:[1]

I. Authorities of the Commonwealth of Virginia violated Petitioner's rights under the Vienna Convention.

II. Petitioner was incompetent to stand trial because his fanatical religious beliefs and incomprehension of the American justice system made him incapable of assisting in his own defense.

III. Virginia permits the death penalty to be arbitrarily imposed and it was arbitrarily imposed in this case.

 A. The Commonwealth arbitrarily sought the death penalty.

 B. The Commonwealth arbitrarily imposes the death penalty in capital rape-murder cases.

 C. Imposition of the death penalty on Petitioner is not proportional to the penalty in other capital rape-murder cases.

IV. The Supreme Court of Virginia's statutorily required review denied Petitioner due process and was constitutionally inadequate to prevent Virginia's arbitrary imposition of the death penalty on Petitioner.

V. Application of Virginia's statutory aggravators results in capricious and arbitrary imposition of the death penalty.

 A. Virginia's "vileness" factor is unconstitutionally vague and fails to permit the jury to distinguish meaningfully and rationally the few for whom death may be an appropriate sentence from the many for whom it is not, in violation of the Due Process Clause of the Fourteenth Amendment and the prohibition against cruel and unusual punishment under the Eighth Amendment.

 B. The future dangerousness aggravator was unconstitutionally applied here because the statutory language is confusing and because the jury was permitted to utilize evidence of unadjudicated acts of misconduct to sentence Petitioner to death without any requirement or instruction that it could not utilize such acts unless the jury found that such acts were estab-

---

1. The claims are taken verbatim from Mr. Breard's petition.

lished by some standard of proof such as proof beyond a reasonable doubt.

VI. The trial court improperly refused to strike a prospective juror in violation of the right to an impartial jury.

VII. The court improperly allowed the prosecutor to ask expert witnesses if they had been retained by defense counsel and to state in closing argument that experts had been hired by defense counsel.

VIII. The Petitioner was denied reasonably effective assistance of counsel.

 A. Counsel failed to raise the issue of the Vienna Convention and state habeas counsel failed to raise it in the state habeas corpus petition.

 B. Counsel failed to have Petitioner evaluated as to competency at the time of trial, and state habeas counsel failed to raise this issue in the state habeas corpus petition.

 C. Counsel failed to perform an adequate mitigation investigation.

 D. Counsel improperly gave the prosecutor notice of use of expert testimony on Petitioner's insanity.

 E. Counsel failed to timely request a mistrial based on the prejudicial testimony of Florence Dickie.

IX. The sentence of death was imposed under the influence of passion, prejudice or other arbitrary factors and/or was excessive or disproportionate to the penalty imposed in similar cases.

X. The cumulative prejudice suffered by Breard because of the multiple violations of his rights requires reversal of his conviction and/or death sentence.[2]

### IV. Standard of Review

Before addressing Petitioner's claims, the Court must consider the applicability of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214. This Act, which became effective on April 24, 1996, makes significant changes to the law of federal habeas corpus review.

The relevant amendments are organized in two chapters. Chapter 153 provides procedures for habeas review. Newly enacted Chapter 154 provides special procedures for expedited review in capital cases.

### A. Applicability of Chapter 154

In essence, Chapter 154 creates a "quid pro quo arrangement under which States are accorded stronger finality rules on federal habeas corpus review in return for strengthening the right to counsel for indigent capital defendants." Satcher v. Netherland, 944 F.Supp. 1222, 1238 (E.D.Va.1996) (quoting H.R.Rep. No. 23, 104th Cong., 1st Sess. 10 (1995)). To merit consideration under the special expedited procedures, a state must "opt-in," in other words, the state must satisfy certain prerequisites. As summarized in Satcher, those requirements are as follows:

 1. The State must establish by statute, rule of its court of last resort, or other agency authorized by state law a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in state post-conviction proceedings brought by indigent capital defendants. See § 2261(b).

 2. Such mechanism must provide standards of competency for the appointment of such counsel. See § 2261(b).

 3. Such mechanism must affirmatively offer counsel to all state prisoners under capital sentence. See § 2261(c).

 4. Such mechanism must provide for the entry of a court order either appointing counsel to each indigent capital defendant, or explaining that such an appointment was not made on the basis that a defendant was not indigent or rejected the offer of counsel with an understanding of the legal consequences. See § 2261(c).

Id. at 1241. When Satcher's state habeas proceedings became final on October 3, 1994, Virginia had not satisfied the first, third and fourth "opt-in" requirements. Satcher at 1245. Breard's state habeas proceedings became final on January 17, 1996. In the

---

**2.** This claim is first advanced as claim B in Breard's Reply Brief.

interim, VA.CODE ANN. § 19.2–163.7 was amended. It now mandates appointment of post-conviction counsel for indigent defendants. Respondent insists that this change satisfies the third and fourth criteria.

■ However, the State has not satisfied the first criteria. Virginia has not established an appropriate mechanism for the appointment and payment of counsel. *Id.* at 1241–42. As Judge Payne stated in *Satcher*, "substantial compliance" with the Act's requirements is not sufficient:

> If Congress had intended to afford the States the very significant benefits conferred by Chapter 154 on the basis of a finding of substantial compliance based on past performance, it could have done so. However, it elected not to do so; and, instead, Congress chose to confer those benefits only if the States made an affirmative, institutionalized, formal commitment to provide a post-conviction review system which Congress considered to be crucial to ensuring fairness and protecting the constitutional rights of capital litigants.

*Id.* at 1242 (internal quotations omitted). Thus, the Commonwealth is not entitled to the expedited review provided by Chapter 154.

### B. Applicability of Chapter 153

In Chapter 153, Congress amended the old habeas statutes. Most federal courts considering the issue have concluded that these amendments are not retroactive. *See, e.g., Boria v. Keane,* 90 F.3d 36, 38 (2nd Cir.1996) (per curiam); *Edens v. Hannigan,* 87 F.3d 1109, 1111 n. 1 (10th Cir.1996); *Satcher* at 1249. *But see Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996). These courts, however, were determining whether the amendments applied to *pending cases.* The effective date of the Act was April 24, 1996. Breard filed his first pleadings before the Court on April 25, 1996. This is one day after the effective date of the new law.

■ Unless Congress expresses a contrary intent, a statute takes effect on the date of enactment. *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991). Yet, Petitioner insists that, if applied in this case, the Act would have an impermissible retroactive effect. When a statute lacks express Congressional intent as to retroactivity, the Court must determine "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film· Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). This Court will not reach a conclusion regarding the retroactivity of the Act. As discussed below, Petitioner's claims fail under the new standards and would also fail under prior law. *See e.g. Bennett v. Angelone,* 92 F.3d 1336, 1343 (4th Cir.1996) (omitting any discussion of the new act because the writ fails under the more deferential standards of the old law); *Sherman v. Smith,* 89 F.3d 1134, 1142 n. 1 (same).[3]

### C. Procedural Default under Chapter 153

■ Petitioner argues that procedural default is no longer a bar to federal review under the new law. In essence, he argues that Congress' inclusion of a procedural bar in the newly enacted Chapter 154 evinces Congress' intent to extinguish all procedural bars under Chapter 153. He also notes that while Congress did include statutory codification of certain judiciary rules, it did not codify the default provisions.

These arguments are specious. Congress' inclusion of a procedural default rule in Chapter 154 is easily explained. In chapter 154, Congress sought to create a new subcategory of procedures for handling habeas petitions in capital cases. The legislature enacted Chapter 154 to accord "stronger finality rules on habeas corpus review" in capital cases. H.R.Rep. No. 23, 104th Cong., 1st Sess. 10 (1995). The broader procedural bar included in Chapter 154 is part of this attempt. This in no way suggests Congress' intent to eviscerate the procedural default rules applicable in all other habeas petitions. Other than additional subparagraph divisions, the language of the old

**3.** Also, since Petitioner's claims fail under either standard, this Court need not address Petitioner's argument that the Act offends Article III.

§ 2254(b) remains largely intact. The Court may confidently assume that Congress would have expressly stated any intent to make such a sweeping change in the law.

## V. Exhaustion and Procedural Default

■ This Court's review of Breard's petition for habeas corpus is restricted to the inquiry of whether his confinement and sentence are in violation of the federal Constitution or laws. 28 U.S.C. § 2241(c)(3). Before reaching the merits of Petitioner's claims, he must demonstrate that he has exhausted all state court remedies. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In this case, Petitioner raised several of the present claims in his petition for a writ of habeas corpus before the Virginia Courts. His remaining claims are exhausted because they were never raised in state court and could not be raised in state court now. *See* VA.CODE ANN. §§ 801.654(B)(2) and 801.654–1.

■ This Court will not consider claims that are procedurally defaulted. These include claims never presented to a state court. *Gray v. Netherland,* —— U.S. ——, —— —— ——, 116 S.Ct. 2074, 2080–81, 135 L.Ed.2d 457 (1996); *Bassette v. Thompson,* 915 F.2d 932, 937 (4th Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991). Likewise, a federal district court may not review claims defaulted under an independent and adequate state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991).

■ The Court recognizes that a procedural bar or default is not absolute. This Court may consider a procedurally defaulted claim if "the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565. The Court will address Petitioner's cause and prejudice arguments as they relate to each claim.

*Claim I*

■ Virginia's persistent refusal to abide by the Vienna Convention troubles the Court. However, a violation of rights under the Convention is insufficient to permit § 2254 relief. *Murphy v. Netherland,* No. 3:95cv856, Memorandum Opinion at 6–8 (E.D.Va. July 26, 1996). In any event, Petitioner never raised this issue in state court. Therefore, the claim is defaulted and federal review is barred. *Gray,* —— U.S. at —— —— ——, 116 S.Ct. at 2080–81; *Bassette,* 915 F.2d at 937.

■ Petitioner argues that the Commonwealth's failure to comply with the Vienna Convention provides just cause for the default. However, the Commonwealth's failure to comply with the Vienna Convention did not prevent Breard's counsel from raising the issue during state proceedings. The only predicate fact required to raise the claim was the knowledge of Breard's foreign nationality. The legal knowledge required to raise the claim is imputed to Breard through the various attorneys who represented him during the trial, direct appeal, and state habeas proceedings. "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of any attorney error." *Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566–67 (internal quotations omitted).

*Claim II*

■ This is also the first time Petitioner has asserted his incompetency to stand trial. Petitioner asserts that his competency to stand trial may never be waived. Early case law supports this view. *Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966); *Kibert v. Peyton,* 383 F.2d 566, 569 (4th Cir.1967). However, in *Townes v. Murray,* 68 F.3d 840 (4th Cir. 1995) *cert. denied,* —— U.S. ——, 116 S.Ct. 831, 133 L.Ed.2d 830 (1996), the Fourth Circuit summarily dismissed a similar competency claim as procedurally barred. Although Fourth Circuit did not address prior case law on the issue, *Townes* is dispositive and forecloses any ruling in favor of the Petitioner.

■■■ In any event, Breard was competent to stand trial. An individual is incompetent, where at the time of the trial, he did not have "sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding," nor did he have "a rational as well as factual understanding of the proceedings against him." *Cooper v. Oklahoma,* — U.S. —, —, 116 S.Ct. 1373, 1377, 134 L.Ed.2d 498 (1996). In an affidavit signed on June 13, 1995, Breard's trial counsel stated the following:

> We also investigated the possibility of an insanity defense and succeeded in persuading the trial court to appoint three experts who examined and evaluated Breard. All of the experts, however, concluded that Breard was sane. *Throughout our contact with Breard, moreover, it was clear that Breard was articulate, bright and competent to stand trial. We had no difficulty communicating with Breard. None of the expert evaluators had given any indication that Breard was incompetent to stand trial.*

(Respondent's Ex. I at ¶ 4, emphasis added). Before reaching this conclusion, trial counsel consulted three separate experts. Counsel was entitled to rely upon information provided by defense experts. *Pruett v. Thompson,* 996 F.2d 1560, 1574 (4th Cir.) (counsel is not required to second-guess the experts appointed to assist the defense), *cert. denied,* 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993).

Yet, Petitioner's federal habeas counsel argues that Breard's "religious fanaticism and belief in the satanic curse, in conjunction with his fundamental misconception of the North American legal system, deprived Petitioner of any rational understanding of the proceedings against him." (Petitioner's Brief at 27). This does not show Breard's incompetence to stand trial. Rather, it is an attempt to embroil the Court in an analysis of the appropriateness of certain religious and cultural beliefs. Such an analysis is inappropriate and unnecessary. Although the record suggests that Petitioner often declined counsel's advice, nothing suggest that he was unable to give his attorneys needed information or was unable to comprehend the trial.

### Claims IIIA and IIIB

■■■ These claims were not presented to the state courts and the Court will not consider them at this juncture. *Gray* at —–—, 116 S.Ct. at 2080–81; *Bassette,* 915 F.2d at 937. On direct appeal, Breard argued that the jury imposed the death penalty under the influence of passion, prejudice or other arbitrary factors. (Petitioner's Appellate Brief before the Supreme Court of Virginia 3, 43, 45). In particular, he argued that the death penalty was arbitrarily *imposed* in *his* case. In the present petition, Breard claims that the Commonwealth arbitrarily *sought* the death penalty (Claim IIIA) and that the Commonwealth arbitrarily imposes the death penalty in *all* capital rape-murder cases (Claim IIIB). While acknowledging the differences in these arguments, Petitioner insists that "a broad conclusory allegation [is] sufficient to save the claim" from procedural default. (Petitioner's Reply Brief at 31). This is not the law. Recent Supreme Court opinions have emphasized that claims must be "fairly presented" to the state courts. *See, e.g., Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1994) (per curiam) (holding that exhaustion of a similar claim is insufficient to satisfy the "fairly presented" standard); *Gray,* — U.S. at —, 116 S.Ct. at 2081 ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the substance' of such a claim to the state court").

### Claim IIIC and Claim IX

■■■ In claim IIIC Breard argues that the "imposition of the death penalty on Petitioner is not proportional to the penalty in other capital rape-murder cases." Similarly, in Claim IX he states that "the sentence of death was imposed under the influence of passion, prejudice or other arbitrary factors and/or was excessive or disproportionate to the penalty imposed in similar cases." The Virginia Supreme Court held both claims defaulted under the rule of *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975); VA.CODE ANN. § 8.01–654(B)(2). Under *Slayton,* state habeas re-

view is barred by the failure to raise an issue at trial or on direct appeal. *Slayton* is a well recognized bar to federal review. *Spencer v. Murray,* 18 F.3d 229, 232 (4th Cir.1994).

 Breard argues that the Supreme Court of Virginia erred in applying the *Slayton* bar. In Petitioner's Appellate brief, he listed facts sufficient to support both claims. However, the brief makes no reference to either state or federal law. VA.CODE ANN. § 17–110.1 also provides certain proportionality guarantees in capital cases. Under state law, the Supreme Court of Virginia must determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and

2. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

*Breard v. Commonwealth,* 248 Va. 68, 88, 445 S.E.2d 670, 681–82 (1994). The Supreme Court of Virginia specifically referenced this statute when it addressed Breard's claims. *Id.* The application of *Slayton* confirms that claims were considered purely as a matter of state law.

 In light of this, the Court may not arbitrarily declare that the claims presented below were federal in nature. The controlling case is *Duncan v. Henry,* 513 U.S. 364, 115 S.Ct. 887, 130 L.Ed.2d 865 (1994) (per curiam), where the Supreme Court ruled that a federal habeas petitioner must expressly assert a federal constitutional claim in the state courts to preserve it for federal review. The assertion of a similar state claim does not suffice. *Id.* Accordingly, these claims are dismissed.

### *Claim VII*

The Virginia Supreme Court held that this claim was defaulted under the rule of *Slayton.* Because Petitioner does not challenge the procedural bar, the claim is dismissed without further discussion.

### *Claims VIIIA & VIII*

 Because they were never raised in state court, these claims are barred. *Gray,* —— U.S. at ——–——, 116 S.Ct. at 2080–81. Breard attempts to overcome the bar by arguing that he had a right to effective assistance of counsel during his state habeas proceedings. Although this is not the general rule, the Supreme Court arguably left room for such an exception in *Coleman:*

> [C]ounsel's ineffectiveness will constitute cause only if it is an independent constitutional violation. [*Pennsylvania v.*] *Finley,* [481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)] and [*Murray v.*] *Giarratano,* [492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989)] established that there is no right to counsel in state collateral proceedings. For Coleman to prevail, therefore, there must be an exception to the rule of *Finley* and *Giarratano* in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction. We need not answer this question. . . .

*Id.* at 755, 111 S.Ct. at 2567. Under Virginia law, Petitioner argues, a trial counsel's ineffective assistance may not be raised on direct appeal. *See Roach v. Commonwealth,* 251 Va. 324, 335–39, 468 S.E.2d 98, 105–06 n. 4 (1996). As a result, the state habeas proceedings provide the first opportunity for raising any ineffective assistance claims. Petitioner argues that every aspect of a criminal conviction must be reviewed at least once and that such review necessarily presupposes competent counsel to handle it.

New § 2254(i) forecloses this argument. Under the amendments, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *Id.* The claim is also barred under pre-act law. Both of the circuit courts which have addressed the issue rejected Petitioner's argument. *Jeffers v. Lewis,* 68 F.3d 299, 300 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 116 S.Ct. 36, 132 L.Ed.2d 917 (1995); *Bonin v. Vasquez,* 999 F.2d 425 (9th Cir.1993); *Hill v. Jones,* 81 F.3d 1015 (11th Cir.1996); *see also Satcher* at 1262–64. The Ninth Circuit rejected the argument because the "excep-

tion would swallow the rule" and create "an infinite continuum of litigation in many criminal cases." *Bonin*, 999 F.2d at 429–30. In essence, such a rule would create a Sixth Amendment right to counsel at every stage of the proceedings because each new pleading presents the first opportunity to challenge the ineffectiveness of the prior counsel. Like the other courts which have addressed the issue, this Court is unwilling to read this right into the Sixth Amendment.

*Claim VIIIE*

■■■ The state habeas judge rejected this claim on the merits. On appeal, the Virginia Supreme Court ruled that the claim was barred by Petitioner's failure to brief or argue the issue as required by Virginia Supreme Court Rule 5:17(c)(4). The Court will not review claims which are defaulted under an independent and adequate state procedural rule. *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

## VI. Claims Addressed on the Merits

Each of Petitioner's claims fails under both the new and old standards set forth for habeas review. Under prior law, the Court reviewed questions of law and mixed questions of law and fact *de novo*. *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Absent several codified exceptions, the state trial court's findings of fact were entitled to a presumption of correctness. *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam).

Under the new statute, a federal court may not grant a writ of habeas based on any claim decided on the merits in state court unless it:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

*Claim IV*

■■■ The Virginia Supreme Court held that this claim was defaulted under the rule

of *Slayton*. However, this holding is in error. On direct appeal, Breard argued that:

> [A] defendant's liberty interest in proportionality review is violated by the consideration of only those cases which are reviewed by the Virginia Supreme Court. Thus, the Court does not consider those cases in which the death penalty was not imposed, which prevents the Court from reviewing the types of cases in which death was not the appropriate sentence.
>
> For these reasons, the proportionality review conducted by the Court constitutes a violation of the Defendant's due process rights under the Fourteenth Amendment.

(Appellant's Brief before the Supreme Court of Virginia at 18–20). He presents the same argument in this petition. Therefore, *Slayton* will not bar review in this case. *Sand v. Murray*, 1994 WL 191657, *1 (4th Cir.1994) (unpublished).

■■■ Nonetheless, Breard has failed to raise a cognizable claim. The Fourth Circuit has considered and rejected this argument. In *Peterson v. Murray*, 904 F.2d 882 (4th Cir.1990), a petitioner argued that his due process and equal protection rights were violated because the Supreme Court of Virginia only compared his case to those in which the death penalty had been imposed. The Fourth Circuit rejected the argument and accepted as dispositive the Virginia Supreme Court's statement that it had reviewed all capital-murder cases. *Id.* at 887; *Spencer v. Murray*, 18 F.3d 237, 239 n. 4 (4th Cir.1994). The Court went on to note that it would not issue a writ based on an error in state law. *Peterson*, 904 F.2d at 887 (citations omitted). Under pre-act law, binding precedent requires the Court to dismiss this claim. Under the new law, the Fourth Circuit's opinions establish that the Virginia Supreme Court's decision is not "contrary to ... clearly established Federal law." 28 U.S.C. § 2254(d). Furthermore, as this Court recently noted, recognizing this type of blanket indictment of the Virginia Supreme Court's review procedure in capital cases without running afoul of *Teague* and the new rule doctrine is impossible. *Murphy* at 5.

*Claim VA*

■ "It is Breard's contention that the jury instruction recently upheld in *Bennett v. Angelone,* 92 F.3d 1336, 1345 (4th Cir.1996) is insufficient under previously cited Supreme Court precedent and indeed under Virginia law." (Petitioner's Reply Brief at 40 n. 24). Petitioner's claim is without merit and must be dismissed under either standard of review. This Court is bound to apply the law as set forth by the Fourth Circuit.

*Claim VB*

■ Regardless of whether the Court relies on pre-Act law or the amended § 2254, Petitioner's claim is controlled by prior case law. The Fourth Circuit has repeatedly rejected any contention that Virginia's "future dangerousness" aggravator is unconstitutionally vague. *Spencer v. Murray,* 5 F.3d 758, 764–765 (4th Cir.1993), *cert. denied,* 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); *Giarratano v. Procunier,* 891 F.2d 483, 489–90 (4th Cir.1989) *cert. denied,* 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990).

■ Similarly, this Court has rejected any claim that Virginia's "future dangerousness" factor is unreliable because it may be proved with evidence of unadjudicated crimes. *Pruett v. Thompson,* 771 F.Supp. 1428, 1442–43 (E.D.Va.1991) (Spencer, J.), *aff'd,* 996 F.2d 1560 (4th Cir.), *cert. denied,* 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993); *see also Richardson v. Johnson,* 864 F.2d 1536, 1541 (11th Cir.) (same), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3175, 104 L.Ed.2d 1037 (1989); *Williams v. Lynaugh,* 814 F.2d 205, 207–08 (5th Cir.) (evidence of "unadjudicated criminal conduct," confirmed by witnesses, is admissible in capital sentencing trial), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987). Consequently, the trial court did not err in refusing to instruct the jury that all alleged prior offenses must be proved beyond a reasonable doubt.

*Claim VI*

■ The Sixth Amendment guarantees the right to a fair and impartial jury in every criminal case. *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). When reviewing this issue, a state court's finding that a juror is fair and impartial is entitled to the presumption of correctness. *Wainwright v. Witt,* 469 U.S. 412, 426–30, 105 S.Ct. 844, 853–55, 83 L.Ed.2d 841 (1985); *Boggs v. Bair,* 892 F.2d 1193, 1201 (4th Cir.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990). Under prior law, the presumption prevails if the state court findings are fairly supported by the record. *Witt,* 469 U.S. at 429, 105 S.Ct. at 854–55. Under newly amended § 2254(e)(1), the presumption may be overcome by clear and convincing evidence.

■ Petitioner argues that Juror Davis should have been excluded from the panel based on two grounds. First, Juror Davis indicated that she "might" be affected by photographs of the victim and of the crime scene and that this "could" affect her ability to be an impartial juror. Once a juror has indicated bias, a trial judge may not simply accept the juror's promise to be fair and impartial. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Here, Ms. Davis stated that she would be an impartial juror (Tr. at 156) and later stated that she would consider the photographs along with and in light of any mitigating evidence (Tr. at 157). On balance, the trial judge found that the juror was "was very intent … very honest and serious." The record fairly supports this conclusion.

Second, Petitioner argues that Juror Davis' answers during *voir dire* established that she would base a finding of future dangerousness solely on the fact the defendant was convicted of murder. In particular, Petitioner relies on the following exchange:

Mr. McCue: How many of you believe that any person who commits a murder will probably commit additional criminal acts of violence in the future?

The Juror: I think it's fair.

Mr. McCue: Ms. Davis, would that based on that belief, do you believe that the imposition of the death penalty would be the only way to prevent the person from committing further acts of violence?

The Juror: If feel like they can take their hands off the case. You know that's very technical. Depends on how that— what was behind and the reason for that murder.

Mr. McCue: And—and if you determined that that person would probably commit further acts of violence in the future, would you feel that the only way to prevent that would be by the imposition of the death penalty?

The Juror: Yes. If I really felt certain about it.

(Tr. at 154–155).

■ A juror is not disqualified simply because she harbors a predisposition toward capital punishment. *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). However, any juror who would impose the death sentence automatically, without considering the relevant aggravating and mitigating factors, must be excluded for cause. *Morgan v. Illinois*, 504 U.S. at 732–34, 112 S.Ct. at 2232, 119 L.Ed.2d 492 (1992). In response to further questioning, Ms. Davis unequivocally demonstrated that she was not so inclined:

Mr. Karp: In looking at the photographs when you got to the penalty phase and deciding the appropriate punishment, would you consider those photographs as evidence along with the other evidence, including the mitigating factors that are going to be presented to the Court in rendering your decision?

Ms. Davis: Yes.

Mr. Karp: And if you found that there— the person—the Defendant in this case was dangerous, would you before deciding upon whether death or life was the appropriate penalty, consider all the evidence, including mitigating factors that the Defendant might present?

Ms. Davis: Yes.

(Tr. at 157). In addition, the trial court specifically found that Juror Davis "would consider all the evidence, including that in mitigation, before she decided what would be the appropriate punishment." *Breard v. Commonwealth*, 248 Va. at 79, 445 S.E.2d at 677. In view of the trial court's superior

ability to assess juror credibility, the Court holds that the trial judge did not commit constitutional error in allowing Juror Davis to serve.

### Claim VIIIC

■ "A petitioner claiming ineffective assistance of counsel must show that: (1) in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent performance; and (2) there is a reasonable probability that, but for counsels' unprofessional errors, the result of the proceeding would have been different." *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir.1996) (quoting *Strickland v. Washington*, 466 U.S. 668, 690–94, 104 S.Ct. 2052, 2065–68, 80 L.Ed.2d 674 (1984)). "When examining ineffective assistance claims, however, [the Court] must appreciate the practical limitations and tactical decisions that trial counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir.1991). "The best course for a federal habeas court is to credit plausible strategic judgments in the trial of a state case." *Id.* at 1364.

■ Implementing these standards, the Court must hold that trial counsel performed an adequate mitigation investigation. Petitioner charges that his trial counsel "neither performed, nor sought the assistance of a qualified person to perform, an investigation of Petitioner's social, psychological, medical, educational and family history." (Petitioner's Brief at 58). In preparation for the trial, defense counsel retained three mental health experts: (1) a psychiatrist; (2) a clinical psychologist; and (3) and medical neurologist. Although these experts were unable to provide helpful evidence, there is no question that counsel's endeavors were both reasonable and within the range of professional competence.

Petitioner also argues that trial counsel should have hired a mitigation investigator, brought in members of the Catholic Church to explain Petitioner's belief in satanic curses, informed the jury of a childhood incident of child abuse, and provided testimony from additional family members and friends. These arguments are without merit. As to

the first, trial counsel requested and the trial court provided monies for a private investigator. Similarly, although trial counsel did not bring in Mr. Breard's childhood bishop or any other bishop from Paraguay, Breard's local religious counselor from the Good News Mission and several friends testified on Breard's behalf. In addition, counsel presented testimony from Breard's mother, who told of his prior sexual abuse. In light of practical limitations inherent in marshaling witnesses from other countries, the Court holds that trial counsel's performance was objectively reasonable. As a result, Breard's claim must fail under both *de novo* review and the standards set forth in the amendments to § 2254.

### Claim VIIID

 Petitioner's argument that trial counsel improperly gave the prosecution notice of expert testimony is also reviewed under the *Strickland* standard. Under VA. CODE ANN. §§ 19.2–264.3:1 E and 19.2–168, trial counsel must give written notice, at least twenty-one days in advance, of any intention to present expert evidence on the issues of sanity or mitigation. If counsel does not comply with this requirement, then the trial court may exclude the evidence.

On February 22, 1993, exactly twenty-one days before trial, counsel filed a notice of intent. A medical doctor had already concluded that Breard was sane at the time of the offense. Thus, Petitioner argues trial counsel had no intention of presenting expert testimony when they filed the notice. On the same date, however, counsel filed a motion to have the court appoint additional mental health experts. Trial counsel's strict compliance with VA.CODE ANN. §§ 19.2–264.3:1 E and 19.2–168 in an effort to preserve Breard's right to present expert testimony was a "plausible strategic judgment" which this court will not second-guess. *Bunch*, 949 F.2d at 1364. Likewise, under the new standard, the Court must hold that Virginia courts' treatment of the claim did not offend clearly established federal law. Accordingly, all of Breard's sub-arguments stemming from this assignment of error are dismissed.

### Claim X

 Petitioner argues that the whole of the alleged defects is greater than the sum of its parts. The same argument has been rejected by the Fourth Circuit, which the Court follows in dismissing this claim. *See Hoots v. Allsbrook*, 785 F.2d 1214 (4th Cir. 1986).

### Conclusion

For the reasons set forth above, the petition is DISMISSED WITH PREJUDICE.